IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MARCO KEON RANDLES, *Defendant/Appellant*.

No. 1 CA-CR 13-0307
FILED 08-21-2014

Appeal from the Superior Court in Maricopa County
No. CR2011-149985-001
The Honorable Edward W. Bassett, Judge

**CONVICTION AFFIRMED; SENTENCE AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

**OPINION**

Judge Andrew W. Gould delivered the opinion of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

**G O U L D, Judge:**

¶1        Defendant Marco Keon Randles appeals his conviction and sentence for first degree premeditated murder.  Randles raises two issues on appeal.  First, Randles contends that Arizona Revised Statutes ("A.R.S.") section 13-751, which permits a juvenile to be sentenced to life in prison without the possibility of release on parole prior to serving 25 years, is unconstitutional.   Second, Randles claims the trial court abused its discretion by precluding his expert from testifying about the alleged effects of alcohol consumed by the victim.  For the reasons set forth below, we affirm Randles' conviction and sentence as modified.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        In September 2011, Randles, who was seventeen-years old at the time, murdered the victim by hitting him repeatedly in the head with a brick.   The state subsequently charged Randles with first degree premeditated murder.

¶3        The jury found Randles guilty of first degree murder.  The trial court sentenced Randles to life in prison without the possibility of parole until he served a minimum term of 25 years pursuant to A.R.S. § 13-751.  Randles timely appealed.

## DISCUSSION

I.        Unconstitutional Sentence

¶4        We review claims regarding the constitutionality of a criminal sentencing statute de novo.  *State v. Bomar*, 199 Ariz. 472, 475, ¶ 5, 19 P.3d 613, 616 (App. 2001); *see State v. Stummer*, 219 Ariz. 137, 141, ¶ 7, 194 P.3d 1043, 1047 (2008) (constitutionality of statutes reviewed de novo); *State v. Hansen*, 215 Ariz. 287, 289, ¶ 6, 160 P.3d 166, 168 (2007) (same).

¶5        In *Miller v. Alabama*, 132 S. Ct. 2455, 2469 (2012), the United States Supreme Court held that the Eighth Amendment bars sentencing juveniles to a mandatory term of life imprisonment without the  possibility of parole.  *See* U.S. Const. amend. VIII; Ariz. Const. art. 2, § 15.  Randles, a juvenile, was sentenced to life in prison without the possibility of parole

---

[1]   We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against defendant.  *State v. Vandever*, 211 Ariz. 206, 207 n.2, 119 P.3d 473, 474 n.2 (App. 2005).

until he served 25 years. A.R.S. § 13-751(A) (2011). Although Randles is eligible for release on parole after serving 25 years, at the time of his sentencing, Arizona's sentencing statutes had abolished parole and, therefore, did not provide a mechanism for imposing parole. *See* A.R.S. § 41-1604.09(I) (2011) (stating that parole is only available "to persons who commit[ed] felony offenses before January 1, 1994"). Thus, based on *Miller*, Randles argues that his sentence is unconstitutional.

¶6          We note that at the time of Randles' sentencing, he was eligible for release by "commutation" of his sentence by the Board of Executive Clemency. *See* A.R.S. § 31-402 (listing procedures for commutation). However, the United States Supreme Court held in *Solem v. Helm*, 463 U.S. 277, 282, 300-01 (1983) that a statutory scheme which only provides for release by commutation does not provide a meaningful opportunity for release. Thus, in *Graham v. Florida*, 560 U.S. 48, 57, 79 (2010), the Court stated that Florida's statutory scheme, which had abolished parole for life sentences and only provided release based on executive clemency, did not provide a meaningful opportunity for a juvenile to obtain release from a life sentence.

¶7          On April 22, 2014, after Randles was sentenced, the Governor signed H.B. 2593 into law. H.B. 2593, 51st Leg., 2nd Reg. Sess. (Ariz. 2014). That legislation adds A.R.S. § 13-716, which provides in relevant part:

> *Notwithstanding any other law*, a person who is sentenced to life imprisonment with the possibility of release after serving a minimum number of calendar years for an offense that was committed before the person attained eighteen years of age is eligible for parole on completion of service of the minimum sentence, *regardless of whether the offense was committed on or after January 1, 1994*. (Emphasis added).

In addition, H.B. 2593 amends A.R.S. § 41-1604.09(I), stating that parole applies to "[a] person who is sentenced to life imprisonment and who is eligible for parole pursuant to section 13-716." A.R.S. § 41-1604.09(I)(2).

¶8          If statutory "language is clear and unambiguous, we must give effect to that language and need not employ other rules of statutory construction." *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997.) In construing the subject statutes, we give every word and phrase its "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *Bilke v. State*, 206 Ariz. 462, 464-65, ¶ 11, 80 P.3d 269,

271-72 (2003) (quoting *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990)).

¶9        Here, the language in A.R.S. § 13-716 and A.R.S. § 41-1604.09(I)(2) satisfies the requirements of the Eighth Amendment by expressly providing that juvenile offenders sentenced to life imprisonment shall be eligible for parole upon completion of their minimum sentence "regardless of whether the offense was committed on or after January 1, 1994." A.R.S. § 13-716; *see* A.R.S. § 41-1604.09(I)(2). This language is in agreement with the legislative history in passing H.B. 2593. *See* House Summary, H.B. 2593, 51st Leg., 2nd Reg. Sess. (Ariz. 2014) ("HB 2593 . . . states that a person sentenced to life in prison for an offense committed before 18 years of age is eligible for parole upon completion of the minimum sentence.").

¶10        This change in the law is applicable to all such sentences, and accordingly, applies retroactively to Randles' sentence in this case.[2] *See*, *e.g.*, *State v. Ross*, 180 Ariz. 598, 602, 886 P.2d 1354, 1358 (1994) (holding that defendant's challenge to execution by lethal gas as cruel and unusual punishment under the Eighth Amendment was rendered moot by statutory change permitting option of execution by lethal injection). Pursuant to A.R.S. § 13-4037, we therefore modify Randles' sentence in accordance with the recently enacted legislation. Accordingly, Randles' constitutional claim is moot.

II.        Preclusion of Expert Opinion on Effects of Alcohol

¶11        At trial, Randles maintained he acted in self-defense. Randles based this defense in part on the victim's autopsy report. According to the report, the victim's blood alcohol concentration ("BAC") was 0.13; in addition, the report showed the presence of cocaine metabolites in the victim's system. Based on this evidence, Randles argued that the victim's cocaine and alcohol consumption made him violent and aggressive, thereby justifying Randles' use of lethal force in self-defense.

¶12        Prior to trial, the State filed a motion *in limine* to prevent Randles' expert witness, Mark Stoltman, a forensic toxicologist, from testifying about the effects of cocaine and alcohol on the victim. Stoltman's

---

[2]        The Governor signed H.B. 2593 on April 22, 2014, and the Second Regular Session for the Fifty-first Legislature ended April 24, 2014; as a result, the effective date for the new law is July 24, 2014. Ariz. Const. art. IV, pt. 1, § 1(3).

proffered testimony included his opinion that consumption of alcohol and cocaine can, as a general matter, make people aggressive, paranoid and violent. In response to the State's motion, Randles argued that Stoltman's testimony supported his assertion that the victim was the aggressor, and therefore was essential to his claim of self-defense.

¶13        The court held a pretrial hearing at which Stoltman testified. After the hearing, the court ruled that Stoltman could testify about the effects of cocaine, including the "crash phase" and "withdrawal symptoms," such as "hyper somnolence, irritability, psychosis, and aggression." However, the court precluded Stoltman from testifying about the effects of alcohol. The court based its decision on *State v. Plew*, 155 Ariz. 44, 745 P.2d 102 (1987), which held that testimony as to the effects of alcohol was not a proper subject for expert testimony, because the subject was "generally thought to be a matter of common knowledge." *Id.* at 47, 745 P.2d at 105.

¶14        On the first day of trial, defense counsel asked the court to reconsider its decision and also provided the court with a chart concerning the stages of alcohol intoxication prepared by Dr. Kurt M. Dubowski, Ph.D., of the University of Oklahoma, Department of Medicine. The court affirmed its prior ruling, and consequently Stoltman testified only as to the potential effects of cocaine.

¶15        On appeal, Randles argues that the trial court's ruling precluding Stoltman's testimony as to the effects of alcohol was reversible error. We disagree.

¶16        We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 29, 97 P.3d 865, 874 (2004). One of the primary concerns in the admission of expert testimony is "whether the subject of inquiry is one of such common knowledge that people of ordinary education could reach a conclusion as intelligently as the expert witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." *State v. Dixon*, 153 Ariz. 151, 155, 735 P.2d 761, 765 (1987); *see also*, Ariz. R. Evid. 702(a) (expert testimony is admissible if expert's "scientific, technical, or other specialized knowledge will help the trier of fact . . . understand the evidence or . . . determine a fact in issue").

¶17        We conclude the trial court did not abuse its discretion in excluding Stoltman's testimony as to the effects of alcohol. Outside of the driving while intoxicated context, our supreme court has consistently

explained that expert testimony regarding the effects of alcohol intoxication is generally inadmissible because the subject is one that is within the common knowledge and experience of most jurors. *Plew*, 155 Ariz. at 47, 745 P.2d at 105 (citation omitted) (stating that the effect of alcohol intoxication is a subject of common knowledge and not a proper subject for expert testimony); *see also State v. Salazar*, 173 Ariz. 399, 407, 844 P.2d 566, 574 (1992) (holding that the general effects of alcohol on the human body and a person's ability to reason are within the common knowledge and experience of a jury; as a result, no expert testimony is necessary to assist the trier of fact); *State v. Rivera,* 152 Ariz. 507, 514-15, 733 P.2d 1090, 1097-98 (1987) (holding that trial court properly excluded expert testimony in a sexual assault case; court precluded expert testimony that alcohol consumption by the victim may have reduced victim's sexual inhibitions and increased his sexual aggressiveness); *State v. Means*, 115 Ariz. 502, 504, 566 P.2d 303, 305 (1977) (doctor's testimony that alcohol affects human behavior "sometime[s] very adversely" is a matter of common experience and knowledge and a jury could intelligently determine issue based on its own ordinary judgment and practical experience).

¶18 Moreover, despite the trial court's ruling, Randles suffered no prejudice. The jury heard a considerable amount of testimony about the victim's consumption of alcohol and cocaine. The victim's aunt testified that both the victim and Randles had consumed alcohol while at the party. The jury learned from the State's forensic pathologist that the victim had a BAC of 0.13 at the time of death and that he had also ingested cocaine at some time prior to that. On cross-examination, the pathologist also noted that from the alcohol level in the victim's blood and urine, it appeared that the victim had probably been "higher" and was more likely "going down" to the 0.13 BAC and "could have been drunker" leading up to the crime. In addition, based on Stoltman's expert testimony regarding the effects of cocaine, the jury also had evidence that someone coming down after cocaine use could experience "nervousness, agitation, irritability, paranoia, [and] even delusions."

¶19 Based on this evidence, Randles was able to support his claim of self-defense by arguing that the victim's ingestion of both cocaine and alcohol had made the victim the aggressor. This evidence, in combination with the common knowledge that alcohol can cause belligerence and aggressiveness, allowed the jury to fully evaluate Randles' self-defense claim. Under these circumstances, we cannot say that the trial court abused its discretion in precluding the expert testimony on the effects of alcohol.

III.     DNA Testing Fee

¶20          The trial court ordered Randles to submit to DNA testing and to "pay the applicable fee for the cost of that testing in accordance with A.R.S. § 13-610."  This court recently held that A.R.S. § 13-610 does not require a convicted defendant to pay for the costs of his DNA testing.  *State v. Reyes*, 232 Ariz. 468, 472, ¶¶ 11-13, 307 P.3d 35, 39 (App. 2013).  We therefore vacate the order requiring Randles to pay for the cost of DNA testing.

## CONCLUSION

¶21          For the foregoing reasons, we affirm Randles' conviction.  We also affirm Randles' sentence as modified.



Ruth A. Willingham · Clerk of the Court
FILED: gsh