IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————

THE STATE OF ARIZONA,
*Petitioner/Cross-Respondent*,

*v.*

RONNIE ROY VERA,
*Respondent/Cross-Petitioner*.

No. 2 CA-CR 2014-0154-PR
Filed September 16, 2014

———————————

Petition for Review from the Superior Court in Pima County
No. CR51483
The Honorable Kyle A. Bryson, Judge

**REVIEW GRANTED; RELIEF GRANTED**

———————————

COUNSEL

Barbara LaWall, Pima County Attorney
By Jacob R. Lines, Deputy County Attorney, Tucson
*Counsel for Petitioner/Cross-Respondent*

Arizona Justice Project
By Natman Schaye, Tucson
*Counsel for Respondent/Cross-Petitioner*

———————————

**OPINION**

Presiding Judge Kelly authored the opinion of this Court, in which
Chief Judge Eckerstrom and Judge Howard concurred.

K E L L Y, Presiding Judge:

¶1　　　　The state seeks review of the trial court's January 2014 ruling granting relief on Ronnie Vera's petition for post-conviction relief, filed pursuant to Rule 32, Ariz. R. Crim. P. Vera has filed a cross-petition and maintains the court abused its discretion in denying his request for immediate release from prison. We grant review and, for the following reasons, we grant relief to the state and vacate the court's order directing that Vera be resentenced. Specifically, we conclude legislation enacted after the court's ruling now provides Vera an adequate remedy for his claim. We deny Vera's cross-petition as moot in light of this resolution.

## Background

¶2　　　　Vera was convicted of first-degree murder and two counts of first-degree burglary, committed in October 1995, and sentenced to "life without parole for twenty-five (25) years" for the murder and concurrent terms for the burglaries. In affirming his convictions and sentences on appeal, we described the facts as follows:

> Sixteen-year-old Vera and his friend, Greg Valencia, were on foot in a condominium complex. Vera stole a bicycle from inside the walled patio of a condominium . . . . Later, at about 10:30 p.m., he was riding the stolen bicycle when Valencia entered another walled patio in the same complex to steal a second bicycle . . . . The victim and his wife heard what sounded like their patio gate rattling, and the victim went outside to investigate. The victim confronted the two youths in a common area outside the victim's patio and attempted to restrain them. Vera threw the first bicycle at the victim and ran; Valencia then drew a handgun and shot the victim once, fatally. After a transfer hearing in

juvenile court, Vera was tried as an adult.
The state prosecuted him for first-degree
murder on a felony murder theory, with a
predicate felony of burglary.

*State v. Vera*, Nos. 2 CA-CR 96-0657, 2 CA-CR 98-0544-PR (consolidated) (memorandum decision filed Aug. 31, 2000).

**¶3**      In his Rule 32 petition below, Vera argued that *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012), was a significant change in the law that entitled him to relief, *see* Rule 32.1(g), Ariz. R. Crim. P., and that his sentence violated the Eighth Amendment under the rule announced in that case. In *Miller*, the Supreme Court held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." ___ U.S. at ___, 132 S. Ct. at 2469. The trial court agreed, concluding *Miller* applied retroactively to Vera's case and writing that it could not "find that the possibility of commutation or pardon is equivalent to parole." The court explained, "[A]lthough the sentencing court exercised some discretion to decide whether to sentence petitioner to natural life without possibility of release or life without possibility of release for 25 years, the abolition of parole by the legislature essentially made the life sentence [without parole] mandatory." The court concluded Vera's sentence violated the Eighth Amendment under the rule announced in *Miller*, granted his petition for post-conviction relief, and scheduled the case for resentencing.

**¶4**      On April 1, 2014, the trial court denied a motion for rehearing in which the state had argued *Miller* did not apply retroactively to Vera's sentence; the state then had thirty days to petition this court for review of the court's rulings, s*ee* Ariz. R. Crim. P. 32.9(a), (c), and the court granted a motion to stay Vera's resentencing pending our review. Later that month, the Arizona legislature passed H.B. 2593 and thereby enacted A.R.S. § 13-716, which appears to provide parole eligibility for Vera and other similarly sentenced juvenile offenders after their mandatory minimum terms have been served. 2014 Ariz. Sess. Laws, ch. 156, § 2. Section 13-716 is effective as of July 24, 2014. *See True v. Stewart*, 199 Ariz. 396, n.1, 18 P.3d 707, 708 n.1 (2001).

**¶5**      On April 23, the state asked the trial court to lift the stay and reconsider its ruling in light of the new law, and, on May 1, the state filed its petition for review in this court.  The court denied the motion to reconsider, concluding it lacked jurisdiction "to take any action except that in furtherance" of this court's review.

## Discussion

**¶6**      On review, the state argues Vera's claim is defeated by the legislature's recent enactment of § 13-716, which provides,

> Notwithstanding any other law, a person who is sentenced to life imprisonment with the possibility of release after serving a minimum number of calendar years for an offense that was committed before the person attained eighteen years of age is eligible for parole on completion of service of the minimum sentence, regardless of whether the offense was committed on or after January 1, 1994.  If granted parole, the person shall remain on parole for the remainder of the person's life except that the person's parole may be revoked pursuant to § 31-415.[1]

In the alternative, the state maintains *Miller* does not apply retroactively to cases on collateral review; that Arizona law, even before the enactment of § 13-716, did not violate the rule in *Miller*; and that Vera's claim is not ripe for review.

**¶7**      Vera argues the trial court correctly found *Miller* applied retroactively and entitled him to relief.  Relying on *State v.*

---

[1]The legislature also amended A.R.S. § 41-1604.09, which governs parole eligibility certification, to provide that section applies not only to prisoners whose offenses were committed before January 1, 1994, but also to "[a] person who is sentenced to life imprisonment and who is eligible for parole pursuant to section 13-716."  2014 Ariz. Sess. Laws, ch. 156, § 3.

4

*Brita*, 158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988) and *Burns v. Davis*, 196 Ariz. 155, ¶ 40, 993 P.2d 1119, 1129 (App. 1999), he argues it is "'highly undesirable'" for this court "to address issues not decided below," such as the effect of § 13-716 on his claim. He also argues the recent legislation may not be applied retroactively and, in any event, provides an insufficient remedy for his *Miller* claim.

**Consideration of § 13-716 on Review**

**¶8**        Vera is correct that we ordinarily do not consider issues on review that have not been considered and decided by the trial court; this is particularly true when we are reviewing a court's decision to grant or deny post-conviction relief under Rule 32. *See State v. Ramirez*, 126 Ariz. 464, 468, 616 P.2d 924, 928 (App. 1980) (appellate court does not consider issues raised for first time in petition for review); *see also* Ariz. R. Crim. P. 32.9(c)(1)(ii) (petition for review "shall contain . . . issues which were decided by the trial court and which the defendant wishes to present to the appellate court for review").

**¶9**        In the context of direct appeals, we have recognized the rule that "an appealing party may not urge as grounds for reversal a theory which he failed to present below" as one of procedure, not jurisdiction. *Stokes v. Stokes*, 143 Ariz. 590, 592, 694 P.2d 1204, 1206 (App. 1984). We may suspend the rule in our discretion when "'the facts are fully developed, undisputed, and the issue can be resolved as a matter of law' or when the question is one of statewide public importance." *Sw. Non-Profit Hous. Corp. v. Nowak*, 234 Ariz. 387, n.7, 322 P.3d 204, 210 n.7 (App. 2014), *quoting State ex rel. Horne v. Campos*, 226 Ariz. 424, n.5, 250 P.3d 201, 205 n.5 (App. 2011).

**¶10**        We find these authorities persuasive. Our decision to consider the recent legislation also is influenced by the unusual circumstances in this case. First, there has been no waiver by the state; § 13-716 was not enacted until after the state had filed its motion for rehearing pursuant to Rule 32.9. Nonetheless, the trial court properly denied the state's subsequent motion for reconsideration; Rule 32.9 provides only for a motion for rehearing, and does not authorize a motion for reconsideration filed after a request for rehearing has been denied. In addition, this petition for

review has been filed by the state, which has no opportunity to seek relief under Rule 32 and has limited opportunity for review of the trial court's decision.[2]

**¶11**        In addition, the effect of § 13-716 is a question "of substantive law," and "the parties may present the issue as thoroughly in the appellate court as it could have been presented below, without injury to either one." *Town of S. Tucson v. Bd. of Supervisors*, 52 Ariz. 575, 583, 84 P.2d 581, 584 (1938). The parties have done so here. And, because our eventual review of a trial court's ruling on the issue would be de novo, *see State v. Decenzo*, 199 Ariz. 355, ¶ 2, 18 P.3d 149, 150 (App. 2001), our consideration now "impels the speedy enforcement of a right, or redress of a wrong, and, as a correct exposition of the law, is appropriate to the facts involved," *Rubens v. Costello*, 75 Ariz. 5, 9, 251 P.2d 306, 308 (1952).

## *Miller* **Claim**

**¶12**        In concluding that a state could not, consistent with the Eighth Amendment, mandate a life sentence without parole for a juvenile homicide offender, the Supreme Court in *Miller* relied on past decisions in which it concluded the Eighth Amendment prohibited the death penalty for offenders who had been under the age of eighteen when their crimes were committed, *Roper v. Simmons*, 543 U.S. 551, 578 (2005), and also prohibited a sentence of life without parole for a juvenile offender who had committed a non-homicide offense, *Graham v. Florida*, 560 U.S. 48, 82 (2010). The Court reasoned that because "juveniles have diminished culpability and greater prospects for reform," they "are constitutionally different from adults for purposes of sentencing." *Miller*, ___ U.S. at ___, 132 S. Ct. at 2464, *citing Graham*, 560 U.S. at 68 ("juveniles have

---

[2]For example, we might decline to consider a Rule 32 petitioner's request for review and relief based on recent legislation that had not been available for the trial court's consideration, knowing that the petitioner could initiate a subsequent Rule 32 proceeding alleging a non-precluded claim based on a significant change in the law. *See* Ariz. R. Crim. P. 32.1(g). The state has no such opportunity.

lessened culpability [and therefore] are less deserving of the most severe punishments").

¶13        In *Graham*, the Court had held that, although "[a] State is not required to guarantee eventual freedom" for juvenile non-homicide offenders sentenced to life in prison, it must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."   560 U.S. at 70, 75 (finding "remote possibility" of executive clemency insufficient to "mitigate the harshness of the sentence"); *accord Miller*, ___ U.S. at ___, 132 S. Ct. at 2469 (addressing sentencing option required for juvenile homicide offenders).  The Court in *Miller* stated *Graham* had "suggested a distinctive set of legal rules" for sentencing juvenile offenders to life imprisonment without parole, "[i]n part because we viewed this ultimate penalty for juveniles as akin to the death penalty."  *Miller*, ___ U.S. at ___, 132 S. Ct. at 2466, *citing Graham*, 560 U.S. at 60-61, 69-71.

¶14        Accordingly, the Court also relied on its past rulings "demanding individualized sentencing when imposing the death penalty" and its particular insistence "that a sentencer have the ability to consider the 'mitigating qualities of youth.'"  *Miller*, ___ U.S. at ___, 132 S. Ct. at 2467, *quoting Johnson v. Texas*, 509 U.S. 350, 367 (1993).  Although the Court did not "foreclose a sentencer's ability" to impose, under state law, a life sentence without parole for a particular juvenile homicide offender, it held laws in Alabama and Arkansas mandating such sentences violated the Eighth Amendment because, "by their nature," they "preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it."  *Id.* at ___, ___, 132 S. Ct. at 2467, 2469.   The Court concluded the "risk of disproportionate punishment" required a sentencing court to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  *Id.* at ___, 132 S. Ct. at 2469.

¶15        When Vera committed his offenses in October 1995, Arizona law provided that a person convicted of first-degree murder "shall suffer death or imprisonment in the custody of the state department of corrections for life."  *See* former A.R.S. § 13-703(A),

1993 Ariz. Sess. Laws, ch. 153, § 1.[3] But the statute provided for two types of life sentences, "natural life" and "life." *Id.* Specifically, a sentencing court could "order that the defendant not be released on any basis for the remainder of the defendant's natural life," and a natural life sentence was "not subject to commutation or parole, work furlough or work release." *Id.* As an alternative, the statute provided, "If the court does not sentence the defendant to natural life, the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years . . . ." *Id.*

¶16        The statute also included a defendant's age among the mitigating circumstances a court must consider "[i]n determining whether to impose a sentence of death or life imprisonment." § 13-703(E). And, in Vera's case, the trial court stated at sentencing that it was imposing the "lesser sentence" of "life without parole for 25 calend[a]r years" based on the mitigating factors of Vera's age and his "somewhat lesser role" in the circumstances that caused the victim's death.

¶17        On its face, the Arizona statute did not mandate a life sentence without parole, but provided a lesser alternative that resembled "life *with* the possibility of parole" and allowed a sentencer to "tak[e] account of an offender's age" as a reason to impose that lesser term. *Miller*, ___ U.S. at ___, ___, 132 S. Ct. at 2460, 2467. Nonetheless, the trial court's observations about Vera's sentence were correct at the time of its ruling granting post-conviction relief: Because the Arizona legislature had eliminated parole for all offenders who committed offenses after January 1, 1994, and replaced it with a system of "earned release credits," *see*

_____

[3]Section 13-703 was amended multiple times after 1993. *See* 1999 Ariz. Sess. Laws, ch. 104, § 1; 2001 Ariz. Sess. Laws, ch. 260, § 1; 2002 Ariz. Sess. Laws 5th Spec. Sess., ch. 1, § 1; 2003 Ariz. Sess. Laws, ch. 255, § 1; 2005 Ariz. Sess. Laws, ch. 166, § 2; 2005 Ariz. Sess. Laws, ch. 188, § 3; 2005 Ariz. Sess. Laws, ch. 325, § 2. In 2008, it was renumbered A.R.S. § 13-751, 2008 Ariz. Sess. Laws, ch. 301, §§ 26, 38, and § 13-751 was again amended in 2012, 2012 Ariz. Sess. Laws, ch. 207, § 2. None of these subsequent amendments affect our analysis of the relevant provisions.

1993 Ariz. Sess. Laws, ch. 255, § 86—which has no ready application to an indeterminate life sentence—Vera's "only possibilities for release . . . would be through a pardon or commutation by the governor," *see generally*, A.R.S. § 31-402(C)(4).[4]   Thus, Vera has argued, and the court agreed, that in Arizona, a sentence of life imprisonment without parole was, in effect, mandatory, in violation of the rule announced in *Miller*.

¶18        The Arizona Legislature's recent enactment of § 13-716 appears to provide a juvenile sentenced to a twenty-five year to life term with "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."  *Graham*, 560 U.S. at 75. Because we conclude § 13-716 provides an adequate remedy for Vera's *Miller* claim, we need not consider whether, before that statute was enacted, Arizona law was consistent with the rule announced in *Miller,* or whether *Miller* applies retroactively to cases on collateral review.  We will, however, address Vera's arguments that § 13-716 may not be applied retroactively to his sentence and provides an insufficient remedy for his claim.

**Section 13-716 Not Retroactive**

¶19        Vera contends the application of § 13-716 to his sentence would be "retroactive," in violation of A.R.S. § 1-244[5] and "the separation of powers established by Article 3 of the Arizona Constitution."   As an initial matter, we agree with the state that

---

[4]"[T]he board of executive clemency . . . . [s]hall receive petitions from individuals, organizations or the department [of corrections] for review and commutation of sentences and pardoning of offenders in extraordinary cases and may make recommendations to the governor."  § 31-402(C)(4).  "[T]he governor retains ultimate authority to grant or deny a recommended commutation."  *McDonald v. Thomas*, 202 Ariz. 35, ¶ 12, 40 P.3d 819, 824 (2002); *see also Wigglesworth v. Mauldin*, 195 Ariz. 432, ¶ 24, 990 P.2d 26, 33 (App. 1999) (under present law, "an Arizona governor's discretion to act on the Board's recommendations remains unfettered, subjective, arbitrary, and a matter of grace").

[5]"No statute is retroactive unless expressly declared therein."

§ 13-716 is not a "retroactive" statute. "The fact that [a statute] may in application relate to antecedent events does not make it retroactive in application." *Tyree v. Moran*, 113 Ariz. 275, 277, 550 P.2d 1076, 1078 (1976).

**¶20** In *Tyree*, an inmate sought the "temporar[y] release[]" afforded by an amended parole statute that did not take effect until after he had been sentenced. *Id.* at 276-77, 550 P.2d at 1077-78. In rejecting the argument that the amendment applied only to inmates sentenced after its effective date, the court reasoned, "The amendment is remedial in nature, and such statutes do not normally come within the rule against retrospective operation." *Id.* In addition, the court observed the amendment "[did] not alter the penalty which was attached to any offense, nor create a new penalty, nor change the sentence imposed" and concluded it "was meant to be effective as to all prisoners irrespective of the date of imposition of sentence." *Id.*

**¶21** Similarly, § 13-716 does not alter Vera's penalty, create an additional penalty, or change the sentence imposed. As this court has explained,

> Courts have power to impose sentences only as authorized by statute and within the limits set down by the legislature. Whether or not a prisoner is eligible for release on parole or absolute discharge is not for courts to decide—it is within the control of the board of [executive clemency] . . . or the department of corrections.

*State v. Harris*, 133 Ariz. 30, 31, 648 P.2d 145, 146 (App. 1982) (citation omitted). Section 13-716 affects only the implementation of Vera's sentence by establishing his eligibility for parole after he has served

the minimum term of twenty-five years. It is a remedial statute that affects future events; it is not a "retroactive" statute.[6]

**¶22** Neither are we persuaded by Vera's argument that § 13-716 impermissibly infringes on the role of the judiciary. Vera relies on *State v. Murray*, 194 Ariz. 373, 982 P.2d 1287 (1999), for the proposition that the legislature may not "'change the legal consequence of events completed before [a] statute's enactment,'" because "[t]he substantive legal consequence of past events is determined by the law in effect at the time of the event, and the determination of that law is for the courts to decide." *Id.* ¶ 6, *quoting San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, ¶ 16, 972 P.2d 179, 189 (1999) (alteration in *Murray*). But our supreme court has limited this statement, explaining that *Murray* involved "a statute retroactively restricting a defendant's vested right to parole eligibility." *State v. Montes*, 226 Ariz. 194, ¶ 13, 245 P.3d 879, 882 (2011). The court observed, "In holding that the statute violated separation of powers, we noted that parole eligibility on sentencing is a 'substantive right' and the Legislature 'may not disturb vested substantive rights by retroactively changing the law that applies to completed events.'" *Id.* ¶¶ 11, 13 (legislature "does not violate separation of powers when it acts to make a law retroactive without disturbing vested rights, overruling a court decision, or precluding judicial decision-making"), *quoting Murray*, 194 Ariz. 373, ¶ 6, 982 P.2d at 1289. In contrast to the statute at issue in *Murray*, § 13-716 does not impair vested rights. Rather, it affords an additional opportunity for release for juveniles sentenced to life imprisonment, available only after their mandatory minimum terms have been served.[7]

---

[6]Accordingly, although we agree that Vera's "constitutional claim is moot" as a result of § 13-716, *State v. Randles*, 693 Ariz. Adv. Rep. 3, ¶ 10 (Ct. App. Aug. 21, 2014), we do not agree with that court's conclusion that the statute "applies retroactively," and we see no need to "modify [a defendant's] sentence in accordance with" § 13-716, as the court did in that case, *id.*

[7]Conversely, Vera's concern "that any remedy provided by the legislature may be quickly modified or withdrawn" appears to

**Individualized Sentencing Requirement**

**¶23**      Relying on *People v. Gutierrez*, 324 P.3d 245 (Cal. 2014), Vera also argues the enactment of § 13-716 "does not remedy the unconstitutional life sentence the judge was required to impose," because "*Miller* made clear that judges must have discretion at sentencing." In *Gutierrez*, the California Supreme Court concluded that recent legislation had failed to remedy the imposition of presumptive life sentences without parole for juvenile homicide offenders. *Id.* at 266-67. The legislation permitted such offenders to petition for resentencing after serving fifteen, twenty, or twenty-four years in prison. *Id.* Noting the Supreme Court's emphasis in *Miller* on individualized sentencing, the court concluded this was insufficient to remedy a sentencing court's "underlying judgment of the offender's incorrigibility 'at the outset,'" and remanded the cases for resentencing. *Id.* at 267, 270, *quoting Graham*, 560 U.S. at 75.

**¶24**      But in this case, the trial court exercised discretion, consistent with *Miller*, in considering whether to impose a sentence of natural life or the "lesser sentence" of life without release for twenty-five years. It expressly considered Vera's age as a mitigating factor when it imposed "the lesser sentence" available. And, in imposing a sentence of "life without parole for twenty-five (25) years," the court clearly believed this alternative sentence would provide Vera with a meaningful opportunity of release, telling Vera,

> Your life is not over. What you do with the rest of it is up to you on a daily basis. You can between now and the time you get out of prison, and one day you will, you can educate yourself and you can be become a spokesperson so that perhaps your influence will prevent some other young person from dropping out of school and becoming involved in a situation where

be foreclosed by *Murray*, at least to the extent such future legislation would impair substantive rights now afforded by § 13-716. *See Murray*, 194 Ariz. 373, ¶ 6, 982 P.2d at 1289.

guns are used by people who are utterly clueless about the consequences.

Nonetheless, Vera is correct that, when his sentence was imposed, the court had been mistaken about the availability of parole or other systematic release and that, in fact, his "only possibility of release after 25 years [would have been] through a pardon or commutation by the governor." *See* A.R.S. §§ 31-402(C), 31-443.[8]

¶25 We conclude the sentencing court's misunderstanding about the law did not affect its exercise of discretion in considering and imposing what it believed to be a meaningfully lesser term of imprisonment, based "fundamentally" on Vera's age. *See Harris*, 133 Ariz. at 31, 648 P.2d at 146 (prisoner's eligibility for release "is not for courts to decide" at sentencing).

¶26 We cannot agree that Arizona's sentencing statute violated the rule in *Miller* by "preclud[ing] a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Miller*, ___ U.S. at ___, ___, 132 S. Ct. at 2467, 2469. To the contrary, at all times relevant to this decision, the sentencing statute has provided what appears to be a lesser alternative to a sentence of "natural life," which renders a defendant ineligibile "for commutation, parole, work furlough, work release or release from confinement on any basis." § 13-751(A); *see also* 1993 Ariz. Sess. Laws, ch. 153, § 1. Thus, when the Court in *Miller* counted Arizona among "the 29 jurisdictions mandating life without parole for children," it did not refer to the sentencing statute alone, but considered it in the context of the release statute that eliminated parole for offenses committed after 1994. *Miller*, ___ U.S. at ___ &

---

[8]As one court observed, in addressing the application of earned release credits under the "'old code'" as it existed in 1974, "it is impossible to deduct time from an indeterminate denominate — a person's life." *Escalanti v. Dep't of Corr.*, 174 Ariz. 526, 528, 851 P.2d 151, 153 (App. 1993) ("as a practical matter," parole-eligible prisoner sentenced to twenty-five years to life "will not receive any reduction in his sentence because of any statutory credits").

n.13, 132 S. Ct. at 2473 & n.13, *citing* A.R.S. §§ 13-752 and 41-1604.09(I).

**¶27**     The Arizona legislature has now remedied that circumstance.  By enacting § 13-716, it has provided Vera and similarly situated prisoners an opportunity for parole, consistent with the "meaningful opportunity" for release contemplated by *Miller* and *Graham*.  *Graham*, 560 U.S. at 75.

## Disposition

**¶28**     For the foregoing reasons, we grant relief on the State's petition for review, and deny as moot Vera's cross-petition for review seeking immediate release.  We vacate the trial court's order granting Vera relief and directing that he be resentenced.