JUSTICE MCKINNON,
dissenting.
¶34 In Beach, this Court considered the U.S. Supreme Court’s pronouncement in Miller, that “a sentencer follow a certain process —considering an offender’s youth and attendant characteristics—before imposing a particular penalty.” Miller, 567 U.S. at 483, 132 S. Ct. at 2471 (emphasis added). The Court was asked to decide whether Miller applied to a state collateral proceeding thus requiring Beach to be resentenced. I specially concurred in Beach, concluding Montana’s individualized and discretionary sentencing *525 scheme already required a sentencing court to consider a defendant’s individual needs, characteristics, family environment, and prospects for rehabilitation—including age. In my opinion, it was significant that Miller had been decided within the context of a mandatory statutory sentencing scheme, which did not allow for imposition of a sentence less than life without parole for first degree murder, regardless of the age of the offender at the time the crime was committed. I also concluded that pursuant to Montana’s habeas corpus statute, § 46-22-101(2), MCA, and our holding in Lott, Beach was precluded from attacking his facially valid conviction.
¶35 Following this Court’s decision in Beach, the U.S. Supreme Court decided Montgomery. In my opinion, Montgomery does not simply decide whether a “certain process” required by Miller is to be applied retroactively, Montgomery actually rewrites and expands the pronouncements made in Miller. In Montgomery, the Court stated that Miller “rendered life without parole an unconstitutional penalty for a class of defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth.” Montgomery, _ U.S. at _, 136 S. Ct. at 734 (internal quotations and citation omitted). The Montgomery Court described its holding in Miller as barring sentences of life without parole “for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility.” Montgomery, _ U.S. at _, 136 S. Ct. at 734. The Montgomery Court explained, “[t]he only difference bet ween .Roper and Graham, on the one hand, and Miller, on the other, is that Miller drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption.” Montgomery, _ U.S. at _, 136 S. Ct. at 734. The Montgomery Court held that “Miller, then, did more than require a sentencer to consider a juvenile offender’s youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of‘the distinctive attributes of youth.’ ” Montgomery, _ U.S. at _, 136 S. Ct. at 734 (quoting Miller, 567 U.S. at 472, 132 S. Ct. at 2465).
¶36 The difficulty presented in the instant proceedings is that the attributions of the Montgomery Court to its Miller decision do not appear in Miller. In fact, Miller stated: “Our decision does not categorically bar a penalty for a class of offenders or type of crime-as, for example, we did in Roper or Graham. Instead, it mandates only that a sentencer follow a certain process-considering an offender’s youth and attendant characteristics-before imposing a particular *526 penalty.” Miller, 567 U.S. at 483, 132 S. Ct. at 2471 (emphasis added). Throughout Miller, the constitutional error focused on the mandatory nature of the sentence imposed. Thus, Miller held that mandatory life without parole for juvenile homicide offenders violated the Eighth Amendment’s prohibition on “cruel and unusual punishments.” Miller, 567 U.S. at 465, 132 S. Ct. at 2460. “Before Miller, every juvenile convicted of a homicide in Alabama was sentenced to life without possibility of parole.” Montgomery, _ U.S. at _, 136 S. Ct. at 734 (emphasis added). As Miller required that a sentencing court consider a youth offender’s age, but did not expressly bar life without parole for all juveniles, Miller’s application appeared limited when a statutory sentencing scheme allowed discretion to impose a sentence less than life without parole. In the wake of Miller, there has been considerable question across the country about whether it set forth a substantive or procedural rule, whether it applied to discretionary sentencing schemes, and whether its pronouncements were to be applied retroactively. Courts across the country reached different conclusions as to what Miller meant and required.
¶37 Whether characterized as a clarification or a rewrite of Miller, Montgomery now establishes that “[e]ven if a court considers a child’s age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects ‘unfortunate yet transient immaturity.’ ” Montgomery, _ U.S. at _, 136 S. Ct. at 734 (quoting Miller, 567 U.S. at 479, 132 S. Ct. at 2469). “A hearing where ‘youth and its attendant characteristics’ are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not” and, therefore, give effect to “Miller’s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.” Montgomery, _ U.S. at _, 136 S. Ct. at 735 (quoting Miller, 567 U.S. at 465, 132 S. Ct. at 2460) (emphasis added). Thus, Montgomery held that Miller rendered life without parole an “unconstitutional penalty for... the vast majority of juvenile offenders” because most of their crimes reflect the transient immaturity of youth. Montgomery, _ U.S. at _, 132 S. Ct. at 735 (citations omitted and emphasis added). Montgomery concluded that Miller had “announced a [new] substantive rule of constitutional law” that had retroactive application. Montgomery, _ U.S. at _, 136 S. Ct. at 734.
¶38 Following Montgomery, the U.S. Supreme Court has issued orders vacating and remanding five Arizona state sentences of life without *527 parole for crimes the offenders committed before they turned eighteen. See Tatum, _ U.S. _, 137 S. Ct. 11. Pursuant to Miller, Arizona has expressly considered the offender’s youth as a mitigating factor, but still imposed life without parole based on the nature of the offense and the offender. Significantly, the sentences followed the Arizona Legislature’s enactment of Ariz. Rev. Stat. § 13-716 in 2014, which provided discretion to the sentencing court to allow the possibility of release for a juvenile sentenced to life imprisonment, after serving a minimum number of calendar years. See Arizona v. Vera, 334 P.3d 754, 756-58 (Arizona 2014). Based on Ariz. Rev. Stat. § 13-716, the sentences deemed unconstitutional in Tatum were imposed pursuant to a discretionary sentencing scheme. Although the U.S. Supreme Court in Tatum did not address the case on its merits, the orders are consistent with Montgomery’s holding that unless a juvenile is a member of the exceptional and uncommon class of offenders whose crimes reflect irreparable corruption, a sentence of life without parole is unconstitutionally disproportionate under the Eighth Amendment.
¶39 Montgomery is also significant in that it mandated, “for the first time,” that “[wjhere state collateral review proceedings permit prisoners to challenge the lawfulness of their confinement, States cannot refuse to give retroactive effect to a substantive constitutional right that determines the outcome of that challenge.” Montgomery, _ U.S. at _, 136 S. Ct. at 731-32. The Montgomery Court determined that, under the Supremacy Clause of the United States Constitution, state collateral review courts must give retroactive effect to new substantive rules of constitutional law. Montgomery, _ U.S. at _, 136 S. Ct. at 731. Accordingly, a state’s “collateral review procedures are open to claims that a decision of [the U.S. Supreme Court] has rendered certain sentences illegal, as a substantive matter, under the Eighth Amendment.” Montgomery, _ U.S. at _, 136 S. Ct. at 732 (citation omitted).
¶40 This Court is bound by Montgomery and its “clarification” of Miller. Miller identifies inherent problems when a sentencing court lacks discretion in mandatory sentencing schemes; sets forth factors highlighting the differences between youth and adults (this Court refers to five factors which must be considered, Opinion, ¶¶ 16-17); and enunciates a requirement that the age of the juvenile offender be adequately considered. Montgomery, however, sets forth a new substantive constitutional rule more sweeping than this Court recognizes; Montgomery categorically declares that the imposition of life without parole upon a juvenile offender is unconstitutional, carving *528 out only a small exception for those rare occasions when irreparable corruption has been demonstrated. That the unconstitutional sentence may have been imposed pursuant to a discretionary sentencing scheme is, therefore, of no consequence. Montgomery and Miller stand on equal footing with Roper and Graham in establishing that children are constitutionally different from adults in their level of culpability and in the way they may be constitutionally sentenced. However, Montgomery requires that evidence of “irreparable corruption” or “permanent incorrigibility” be demonstrated, not just that the sentencing court considered and addressed various factors of youth. Montgomery, _ U.S. at _, 136 S. Ct. at 734. Montana’s trial courts, as well as Montana’s Legislature, should be so advised. “We leave to the States the task of developing appropriate ways to enforce the constitutional restriction upon their execution of sentences.” Montgomery, _ U.S. at _, 136 S. Ct. at 735 (citation and alterations omitted). “That Miller did not impose a formal factfinding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole.” Montgomery, _ U.S. at _, 136 S. Ct. at 735.
¶41 Finally, courts tasked with resentencing must decide—in many cases decades after the sentence imposed became final—whether, at the time of commission of the offense, the offender fit within the class of juveniles who were irreparably corrupt. Montgomery has suggested an answer to this problem as well. “A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, e.g., Wyo. Stat. Ann. §6-10-301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years).” Montgomery, _ U.S. at _, 136 S. Ct. at 736. In my view, the no parole designation in Montgomery was the sentencing aspect most troubling for the U.S. Supreme Court because parole ineligibility “condemned [the youthful offender] to die in prison.” Montgomery, _ U.S. at _, 136 S. Ct. at 736. “Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.” Montgomery, _ U.S. at _, 136 S. Ct. at 736. The Court in Montgomery was suggesting a legislative solution for states with mandatory sentencing schemes, in light of its concern that “[gjiving Miller retroactive effect ... not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole.” Montgomery, _ U.S. at _, *529 136 S. Ct. at 736 (emphasis added).
¶42 Based upon Montgomery, the suggested remedy to states with mandatory sentencing schemes of allowingfor parole, together with the prohibition of parole ineligibility in all but the rarest cases, I would conclude that any distinction between Steilman’s sentence for a term of 110 years, without possibility of parole, and life imprisonment, without possibility of parole, is a distinction without a difference. Further, to conclude, as the Court does, that the availability of good time credit is a distinguishing aspect for purposes of sentencing a youth, is likewise inconsistent with the principles set forth in Montgomery. Opinion, ¶¶ 22-23. Montgomery never acknowledged the availability of good time credit as restoring “hope [to the offender] for some years of life outside prison walls ...’’Montgomery, _ U.S. at _, 137 S. Ct. at 736, although doubtless the opportunity to accumulate good time credit was available to every offender whose sentence Tatum vacated. In a similar vein, this Court attempts to distinguish Steilman’s sentence on the basis that it was imposed concurrently to his Washington sentence. Opinion, ¶¶ 22-23. However, imposing a concurrent sentence does nothing to reduce the length of Steilman’s Montana sentence, which remains 110 years regardless of its concurrent nature. More important, however, is Steilman’s parole ineligibility for 110 years, which was the most troublesome aspect for the U.S. Supreme Court in Miller and Montgomery. At the time the sentence was imposed, Steilman was left with no hope of time outside prison. Accordingly, to distinguish Steilman’s sentence on either basis fails to recognize the U.S. Supreme Court’s direction that youth are constitutionally different from adults. A sentencer is required to consider “how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Montgomery, _ U.S. at _, 136 S. Ct. at 733 (quoting Miller, 567 U.S. at 480, 132 S. Ct. at 2469) (emphasis added).
¶43 Lastly, I would be remiss if I failed to comment on the hardship to a victim’s family in having to revisit the tragic circumstances of a loved one’s death. Principles of finality of judgments are deeply rooted in this country’s jurisprudence and should be honored. Deference to the judgment of the sentencing judge, who is the judicial officer most attuned to the circumstances of the case, is equally well entrenched and should similarly be honored. I am, nonetheless, bound by U.S. Supreme Court precedent and obligated to apply it when the circumstances of the case dictate. Here, I can reach but one conclusion—that Montgomery holds a sentence for a youth offender of 110 years without parole is unconstitutionally disproportionate when *530 there is no finding supported by evidence that the youth is irreparably corrupted. The circumstances could support a conclusion that Steilman was irreparably corrupted when he committed the homicide. Steilman was six weeks shy of his eighteenth birthday, had committed another homicide in Washington, and was living an adult lifestyle. The murder was brutal, savage, and senseless. Thus, Steilman hardly appears entitled to “Miller’s central intuition—that children who commit even heinous crimes are capable of change.” Montgomery, _ U.S. at _, 136 S. Ct. at 736. That determination, however, must be made by the trial court.
¶44 I would grant the petition for writ of habeas corpus on the basis that Montgomery and Miller established a new substantive rule that is applicable in state collateral proceedings. In contrast to Justices Wheat and Sandefur, however, I would remand for resentencing so that the District Court is free to impose the original sentence, provided the Miller and Montgomery requirements are met. I do not agree that this Court should merely strike Steilman’s parole restriction as suggested by the Montgomery Court; particular circumstances of a case and the reasons for imposing a sentence should be considered and determined by the trial court, with this Court subsequently reviewing those decisions and record. Based on statements from the victim’s family and other documents in the record, it is clear that parole ineligibility was a significant factor in Steilman’s sentence. It may be, however, that the victim’s family, following discussion with the prosecutor, would prefer to ask the District Court to reimpose his original sentence, none of which we can assess by merely striking the parole restriction. Accordingly, I would remand these proceedings to the District Court for resentencing consistent with Miller and Montgomery.
¶45 While I agree with much of the analysis set forth by the Court in Issue One, it is my belief that the Court fails to adequately recognize the impact of Montgomery and the findings and conclusions which must be made by the sentencing court. I dissent from the Court’s decision in Issue Two, that a term of 110 years without parole is different from a sentence of life imprisonment without parole. Such a conclusion ignores the primary concern in Montgomery—that a youth offender not be “condemned to die in prison” without an “opportunity to show [his or her] crime did not reflect irreparable corruption; and, if it did not, [his or her] hope for some years of life outside prison walls must be restored.” Montgomery, _ U.S. at _, 137 S. Ct. at 736-37.
¶46 I dissent.