NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MORTIMER A. HYLTON, *Plaintiff/Appellant,*

*v.*

DAVID SHINN, et al., *Defendants/Appellees.*

No. 1 CA-CV 24-0547

FILED 05-08-2025

Appeal from the Superior Court in Maricopa County
No. CV2023-000845
The Honorable Dewain Fox, Judge

**AFFIRMED**

COUNSEL

Mortimer Alexander Hylton, Eloy
*Plaintiff/Appellant Pro Se*

Bergin Frakes Smalley & Oberholtze, Phoenix
By Brian M. Bergin, Kevin M. Kasarjian, Anthony R. Napolitano
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Andrew M. Jacobs joined.

---

**H O W E**, Judge:

¶1  Mortimer Hylton appeals from the superior court's denial of special action relief. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2  In 1998, a jury convicted Hylton of two counts of conspiracy to commit first-degree murder, *see* A.R.S. §§ 13-1003(D), -1105, and attempted arson, *see* A.R.S. §§ 13-1001, -1704, for acts occurring in 1997.

¶3  During sentencing, the court orally pronounced that it would "impose a mandatory sentence of 25 years to life in prison" and that "[t]he understanding of the Court is that you must serve 25 calendar years before you're eligible for release." In its written order, the court sentenced Hylton to concurrent imprisonment terms of 25 years to life on the conspiracy count and 11.25 years, with 407 days incarceration credit, on the arson count. The court also ordered for both counts that Hylton "serve one day for every seven days of the sentence imposed under the supervision of the Community Supervision Program, to be served consecutively to the actual period of imprisonment."

¶4  In June 2022, Hylton wrote to the Arizona Department of Corrections, Rehabilitation, and Reentry (the "Department") requesting clarification of his release date. The Department determined that he was ineligible for parole under A.R.S. § 13-718 because he was convicted by a jury but that he could apply for commutation after the completion of 25 years' imprisonment in July 2022.

¶5  Hylton sought special action relief in the superior court. He argued that the Department wrongly denied him access to the Community Supervision Release Eligibility Procedure and Program and "altered his sentence by making commutation the <u>only</u> release process available to him." He argued that such conduct violates his right to due process, equal

protection, separation of powers, and ex post facto prohibition. For relief, Hylton sought an order that the Department declare July 2, 2022, as his "minimum sentence [sentence expiration date]" and that he is eligible for A.R.S. § 13-603(I) "release eligibility/suitability processing." He also sought a declaration that the Department's "commutation release policy" is unconstitutional.

¶6            The court denied Hylton relief. It noted that under A.R.S. § 13-1003(D), conspiracy to commit first-degree murder is punishable by "a sentence of life imprisonment without possibility of release on any basis until the service of twenty-five years." *See* A.R.S. § 13-1003(D). The court further noted that Hylton "is not eligible to apply for parole [but] he is 'eligible for executive clemency or other forms of release after twenty-five years[.]'" (Quoting *State v. Anderson*, 257 Ariz. 226, 231 ¶ 18 (2024).) The court then concluded that the Department "has not deprived Hylton from applying for such release." It further explained that Hylton conflated community supervision with parole and that any term of community supervision would only begin if and when Hylton was released.

¶7            Hylton appealed, and we have jurisdiction. A.R.S. § 12-2101(A)(1); *Bridgeman v. Certa*, 251 Ariz. 471, 473, 475 ¶¶ 2, 10–11 (App. 2021) (superior court's denial of special action relief is a final judgment from which we have appellate jurisdiction).

## DISCUSSION

¶8            Hylton argues that the superior court erred by denying him relief because it misconstrued his argument as demanding immediate release. Instead, he argues he requested as relief only that the Department begin procedures to determine if he is eligible for community supervision release. Specifically, he argues that his sentence was a final illegally lenient sentence that made him eligible for parole or community supervision. Thus, he argues the Department was "required under Ariz. Rev. Stat. §§ 41-[1]604.07(E)(F)(G)(I) in concert with 13-603(I) to initiate Community Supervision [] release consideration review procedures to determine whether Hylton was suitable for release into the Community Supervision Program." Finally, he argues that he was denied equal protection, due process, and protection against ex post facto punishment because persons sentenced to parole "are able to actually obtain release on parole, whereas the class to which Hylton belongs are overwhelmingly unable to obtain release on [community supervision] by application to the [Arizona Board of Executive Clemency]."

¶9        "We generally review the superior court's denial of special action relief for an abuse of discretion," but consider any questions of law de novo. *Bridgeman*, 251 Ariz. at 476 ¶ 16. By Hylton's own admission, his appeal presents only a purely legal question – whether a person sentenced under A.R.S. § 13-1003(D) to a term of 25 years to life imprisonment is eligible for conditional release procedures under A.R.S. § 41-1604.07(E)–(G), (I) after serving 25 years in prison.

## I.        Hylton's Claim That His Sentence Was Illegally Lenient.

¶10        Hylton's sentence was not illegally lenient. An illegal sentence does not comply with "the mandatory provisions of a sentencing statute." *State v. Vargas-Burgos*, 162 Ariz. 325, 326 (App. 1989). Under A.R.S. § 13-1003(D), conspiracy to commit a class 1 felony such as first-degree murder is "punishable by a sentence of life imprisonment without possibility of release on any basis until the service of twenty-five years." The court's sentence complies with the statute. The written order sentenced Hylton to "25 Years to Life." And in its oral pronouncement, the court "impose[d] a mandatory sentence of 25 years to life in prison" and told him that "[t]he understanding of the Court is that you must serve 25 calendar years before you're eligible for release." Neither the court's written order nor its oral pronouncement made him eligible for release before he had served at least 25 years in prison.

¶11        Hylton nonetheless argues that the sentence was illegally lenient because his sentence makes him eligible for community supervision, necessarily implying that A.R.S. § 13-1003(D) prohibits a term of community supervision. But the court ordered that he "serve one day for every seven days of the sentence imposed under the supervision of the Community Supervision Program, to be served *consecutively* to the actual period of imprisonment." (Emphasis added.) This term has effect only if Hylton is actually released from prison. *See* A.R.S. § 13-603(I) ("The term of community supervision shall be served consecutively to the *actual* period of imprisonment.") (emphasis added). Nor does his sentence permit his release before 25 years or require that he be released at any time between 25 years and the end of his life. Thus, the term of community supervision does not illegally alter the requirements of A.R.S. § 13-1003(D).

## II.       Hylton's Claim He Is Entitled to Be Considered for Community Supervision.

¶12        Although Hylton implicitly argues that the Department must initiate community supervision release eligibility procedures only if his

sentence is illegally lenient, we nevertheless address the scope of his sentence at large.

**¶13**   Hylton's sentence does not require the Department to release or consider releasing him to community supervision before the end of his life. Hylton was sentenced to "25 Years to Life," and his sentencing statute provides that he is punishable by "a sentence of life imprisonment without possibility of release on any basis until the service of twenty-five years." A.R.S. § 13-1003(D). Although Hylton argues this creates a "minimum sentence expiration date" of 25 years, the term of Hylton's sentence is "indeterminate life," not "25 years." *See State v. Soto-Fong*, 250 Ariz. 1, 4, 12 ¶¶ 4, 49 (2020) (noting defendant was sentenced to "consecutive life sentences" who was sentenced to "three consecutive life sentences without the possibility of release for twenty-five years"); *State v. Vera*, 235 Ariz. 571, 575 ¶¶ 15–17 (App. 2014) (statute effectively created an "indeterminate life sentence" by providing that "the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years").

**¶14**   Further, by its plain language, A.R.S. § 13-1003(D) creates a negative prohibition but no positive obligation. Specifically, the statute *prohibits* release *before* service of 25 years but does not create any automatic community supervision release process *after* service of 25 years. *See Chaparro v. Shinn*, 248 Ariz. 138, 142 ¶ 17 (2020) (Community supervision is not parole because "the meaning of 'parole' is not ambiguous or synonymous with other forms of release."); *Vera*, 235 Ariz. at 575 ¶ 17 (when statute provided that defendant could not be released on any basis before service of 25 years, defendant's "only possibilities for release . . . would be through a pardon or commutation by the governor" because parole is unavailable). In other words, the statute does not impose any positive obligation on the Department to begin release procedures for Hylton after service of 25 years of his sentence. Rather, the statute prohibits Hylton from obtaining release before he has served 25 years and permits *him* to seek any statutory or administrative mechanisms for his release thereafter. *Anderson*, 257 Ariz. at 231 ¶ 18 ("[B]ecause Anderson's sentence provided for the possibility of release after twenty-five years, Arizona law made him eligible for executive clemency or other forms of release after twenty-five years but not eligible for parole."). Accordingly, A.R.S. § 13-1003(D) does not entitle Hylton to be considered for community release after 25 years of service.

**¶15**   For similar reasons, the imposition of a term of community supervision *after* his term of actual imprisonment also does not require the Department to consider his suitability for release on community

supervision. Under the community supervision statute, the court must impose a term of community supervision on *all* persons convicted of a felony offense whom the court sentences to a term of imprisonment. A.R.S. § 13-603(I). But the defendant serves the community supervision term "*consecutively* to the actual period of imprisonment." A.R.S. § 13-603(I) (emphasis added). Thus, the community supervision term is *separate* from the term of imprisonment and begins only if the defendant is released from prison. Practically, if the defendant serves a life sentence, he will never serve his term of community supervision. *See, e.g.*, *Soto-Fong*, 250 Ariz. at 4 ¶ 4 (recognizing that defendant who was sentenced to three consecutive life sentences without the possibility of release for twenty-five years "will not be eligible for release until he has served 109 years of imprisonment" (including other non-life sentences)). In other words, nothing in the language of the statute requires the Department to permit a defendant sentenced to a life sentence to serve a term of community supervision during his lifetime.

¶16        Finally, the "earned release credit" system of A.R.S. § 41-1604.07 does not change this analysis. Section 41-1604.07(A) allows a prisoner "who is in the eligible earned release credit class" to earn "release credits." A prisoner who has reached his "earned release date" shall be released to begin his term of community supervision. A.R.S. § 41-1604.07(E).  Section 41-1604.06(A) further sets forth that the director of the Department shall establish eligibility criteria and classifications.

¶17        But Hylton has not reached an "earned release date" to begin the process for release to community supervision. He does not argue that he has earned any release credits to this point (nor does he argue the Department has miscalculated an earned release date). Nor could he. Under the Department's classification system, an inmate cannot earn credits "when sentenced pursuant to a statute that . . . requires a mandatory minimum amount of time be served prior to placement in [the earning class]." Ariz. Dep't Corr. Rehab. & Reentry Dep't Ord. 1002 ¶ 1.4.1.1. Because A.R.S. § 13-1003(D) does not allow any possibility of release before service of 25 years in prison, Hylton could not earn release credits during this period. *See Vera*, 235 Ariz. at 575 ¶ 17 (the "earned release credits" system "has no ready application to an indeterminate life sentence"); A.R.S. § 41-1604.07(C) ("Release credits earned by a prisoner . . . shall not reduce the term of imprisonment imposed by the court on the prisoner."). Thus, Hylton did not reach an "earned release date" upon completion of 25 years of imprisonment, and the Department was not obligated to begin community supervision release procedures.

¶18  Because Hylton has no affirmative right to consideration for community supervision under A.R.S. § 13-1003(D), the Department was not obligated to begin community supervision release proceedings. The court thus did not err by denying Hylton special action relief.

### III. Constitutional Claims.

¶19  Hylton argues the Department denied his rights to equal protection, due process, and to be free from ex post facto laws for the same reasons that he contends the Department wrongly denied consideration of community supervision release. Specifically, he argues that "[t]he disparate treatment is shown by allowing persons who are similarly situated to be classified eligible for and released on parole under §§ 13-716 and 13-718 and under *Chapparo v. Shinn* []."

¶20  Hylton's equal protection claim fails because he is not similarly situated to the described persons. *See Vong v. Aune*, 235 Ariz. 116, 123 ¶ 32 (App. 2014) (to establish an equal protection violation, the party must show that "it was treated differently than other people in a 'similarly situated' class") (cleaned up). Section 13-716 applies to juvenile offenders, Section 13-718 applies to offenders who pled guilty and were sentenced to "life with the possibility of *parole*" (emphasis added), and *Chapparo* addressed a case where the court sentenced the defendant to "[l]ife without possibility of parole for 25 years" even though the legislature had eliminated the possibility of parole. *See* 248 Ariz. at 140 ¶ 3. Hylton was not a juvenile when he committed his crimes, he did not plead guilty, and the court did not sentence Hylton to parole. Thus, Hylton is not "similarly situated" to the persons in either of the complained of cases and so cannot establish an equal protection violation. *See Vong*, 235 Ariz. at 123 ¶ 32.

¶21  Finally, Hylton fails to develop arguments about how the Department violated his rights to due process and freedom from ex post facto laws, thus waiving them. *See State v. Vargas*, 249 Ariz. 186, 190 ¶ 13 (2020) ("[I]f a defendant simply asserts a general claim of error on appeal and fails to develop it, a court is not obligated to consider it."); *State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim."); *see also In re $26,980.00 U.S. Currency*, 199 Ariz. 291, 299 ¶ 28 (App. 2000) (this Court does not consider bald assertions offered without elaboration or citation to legal authority).

## CONCLUSION

**¶22** We affirm. We deny Hylton's motion for an accelerated appeal as moot.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR