**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL PAUL JESSUP, *Petitioner-Appellee*, v. DAVID SHINN, Director; ATTORNEY GENERAL FOR THE STATE OF ARIZONA, *Respondents-Appellants*. | No. 18-16820 D.C. No. 2:15-cv-01196-NVW OPINION |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted February 9, 2022
Phoenix, Arizona

Filed April 21, 2022

Before:  Mary H. Murguia, Chief Judge, Susan P. Graber,
Circuit Judge, and Sidney A. Fitzwater,* District Judge.

Opinion by Judge Graber

---

* The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

**SUMMARY**[**]

**Habeas Corpus**

The panel reversed the district court's judgment granting habeas corpus relief to Petitioner Michael Paul Jessup, who challenged his sentence of life without the possibility of any form of release, which an Arizona state court imposed for the first-degree murder Petitioner committed when he was 17 years old.

The district judge held that the Arizona courts' denial of post-conviction relief was contrary to and an unreasonable application of *Miller v. Alabama*, 567 U.S. 460 (2012), in which the Supreme Court held that, before a sentencer may impose a sentence of life without parole on a defendant who committed a crime as a juvenile, the Eighth Amendment requires that the defendant receive an individualized sentencing hearing during which the sentencer considers the defendant's youth and its attendant circumstances.

The state post-conviction court had rejected Petitioner's *Miller* claim on the ground that, unlike the individuals sentenced under the mandatory sentencing schemes at issue in *Miller*, Petitioner in fact received an individualized sentencing hearing during which the sentencing judge, after considering Petitioner's youth and its attendant circumstances, found Petitioner unsuitable for any form of release.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the state court's application of *Miller* was a reasonable one because the sentencing judge thoughtfully considered whether Petitioner warranted a sentence of life with the possibility of *any* form of release, took into account Petitioner's youth and the characteristics of young people, and concluded that Petitioner warranted a sentence of life without the possibility of release.

Petitioner asserted that under the Arizona statutory scheme in effect at time of the murder and at the time of the sentencing, there was no practical difference between a sentence of natural life and a sentence of life with the possibility of release. The panel held that the state court reasonably concluded that, despite this practical result, *Miller* does not mandate resentencing. Given *Miller*'s focus on the required procedure, and given the sentencing judge's extensive deliberation here as to whether Petitioner warranted a possibility of release, the panel wrote that the state post-conviction court reasonably distinguished *Miller*, which addressed situations in which the sentencing authority imposed a sentence of life without parole automatically.

The panel remanded for entry of judgment in favor of the State.

**COUNSEL**

Eliza C. Ybarra (argued), Assistant Attorney General, Criminal Appeals Section; J.D. Nielsen, Habeas Unit Chief; Mark Brnovich, Attorney General; Office of the Attorney General, Phoenix, Arizona; for Respondents-Appellants.

Keith J. Hilzendeger (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Phoenix, Arizona; for Petitioner-Appellee.

**OPINION**

GRABER, Circuit Judge:

Petitioner Michael Paul Jessup was 17 years old when he kidnapped, robbed, and murdered a man in Arizona in 1998. The next year, he pleaded guilty to first-degree murder in Arizona state court. The sentencing judge held an individualized sentencing hearing. The judge exercised his discretion to impose a sentence of life imprisonment without the possibility of any form of release. Although the judge weighed among the mitigating factors Petitioner's youth and a psychological report that addressed the characteristics of youth, the judge found Petitioner unsuitable for the more lenient sentence of life imprisonment with the possibility of release.

In *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that, for a defendant who committed a crime as a juvenile, the Eighth Amendment permits a sentence of life without parole. But before a sentencer may impose that harsh sentence on a juvenile offender, the juvenile defendant

must receive an individualized sentencing hearing during which the sentencer considers the defendant's youth and its attendant circumstances. *Id.* at 483. Petitioner sought post-conviction relief in Arizona state court on the ground that his sentence violated *Miller*. The state post-conviction court rejected Petitioner's *Miller* claim on the ground that, unlike the individuals sentenced under the mandatory sentencing schemes at issue in *Miller*, Petitioner in fact received an individualized sentencing hearing during which the sentencing judge, after considering Petitioner's youth and its attendant circumstances, found Petitioner unsuitable for any form of release. Because the state court's application of *Miller* was a reasonable one, we reverse the district court's grant of habeas relief, and we remand for entry of judgment in favor of Respondents, who are state officials ("the State").

## FACTUAL AND PROCEDURAL HISTORY

In 1998, when Petitioner was 17 years old, he and a companion kidnapped 79-year-old Frank Watkins. They forced Watkins into his pickup truck, took his personal property, and drove to a remote location. Along the way, they stopped to pick up another companion. Once the group arrived at a remote area, Petitioner forced Watkins to walk to a drainage ditch and then shot him several times in the head and face, killing him. Police officers arrested Petitioner about ten days later.

A grand jury indicted Petitioner on five counts, including one count of first-degree murder. At the time, Arizona Revised Statutes section 13-703(A) listed three potential penalties for first-degree murder: (1) death; (2) "natural life," Arizona's term for life without the possibility of release; and (3) life with the possibility of release (in some form, such as parole or commutation) after 25 years of imprisonment, or after 35 years of imprisonment if the

victim was less than 15 years old. Ariz. Rev. Stat. § 13-703(A) (1998). Petitioner and the prosecutor entered into a plea agreement. Petitioner agreed to plead guilty to first-degree murder and armed robbery. In exchange, the prosecutor agreed not to seek the death penalty and to drop the other three charges.

At the sentencing hearing, the parties debated whether Petitioner warranted a sentence of life without the possibility of parole or a sentence of life with the possibility of parole after 25 years. Petitioner's lawyer presented testimony by a psychologist who emphasized Petitioner's age and age-related characteristics, including Petitioner's emotional age of 12 or 13. Petitioner's age was not a cursory or tangential issue. The psychologist has examined numerous young people, and his 24-page, single-spaced report contextualized his findings in comparison to other youthful offenders. The report described Petitioner as "immature" with "regard to impulse control." The psychologist explained why Petitioner was slow to mature and why he had "a functional social level of about 2/3 [his] chronological age." It also was noted that, in general, "[t]he incidence of violence is highest in the age group 15–24" and that Petitioner "can be no younger than 43 at [the] time of release." Addressing specifically the prospect for a young person's maturation, the report concluded:

> Having little foresight and even less capacity for reflection, [Petitioner] has [lived] and is likely to continue to live in moments as opposed to epochs. A broadening of temporal awareness tends to accompany advancement into adulthood, and for this reason, I believe that [Petitioner's] risk of violent offense will gradually diminish with

> maturation – particularly after age 25. Eligibility for, application to, and granting/denial of parole in any case will attend to his psychological condition at the point of that decision many years hence. I regard the minimum sentence available to the court of 25 years to life as sufficient, in the case of Michael Jessup, to offer protection to the general public.

Petitioner's lawyer, too, stressed Petitioner's youth and his ability to reform.

After much deliberation and weighing of mitigating and aggravating factors as to the murder count, the judge sentenced Petitioner to natural life:

> So when my choice is between a chance that you will be paroled and certainty of knowing that you will be in prison for the rest of your life, the choice becomes clear to me. I really do believe that you forfeited your right to walk as a free member of society, again, because of the heinousness of the crimes and cruelty that you imposed on Mr. Watkins.

In 2013, Petitioner filed, in state court, a notice of post-conviction relief, arguing that his sentence of life without the possibility of parole violated *Miller*. The state trial court assumed that *Miller* applied retroactively, but the court denied relief on the ground that the sentencing judge had considered Petitioner's age and age-related characteristics. On appeal, the Arizona Court of Appeals also denied relief, reasoning in full:

> Assuming *arguendo* that *Miller* applies retroactively, Jessup has not shown an entitlement to relief. *Miller* prohibits *mandatory* life sentences without the possibility of parole for juvenile offenders. [132 S. Ct.] at 2460. Jessup's sentence to natural life was not mandatory. The superior court noted at sentencing that it had the option to sentence Jessup either to natural life or life with a possibility of release after 25 years' imprisonment. *See* Ariz. Rev. Stat. § 13-703(A) (1999). In considering the appropriate sentence, the superior court found Jessup's age to be one of several mitigating factors. The court also heard from a psychologist regarding his presentence evaluation of Jessup as a juvenile offender. Among other opinions, the psychologist did not believe Jessup's aggressive activity would extend into adulthood and his appreciation of the wrongfulness of his acts would increase with age. The psychologist further noted that adolescents do not have the same kind of judgment as adults. In short, the superior court considered "how children are different" and Jessup's sentence to natural life complied with *Miller*.

The Arizona Supreme Court summarily denied relief without comment.

In 2015, Petitioner filed this action, asserting that his life sentence violates *Miller*. A magistrate judge recommended that the district judge deny the petition. The district judge disagreed and granted habeas relief. The district judge held

that the Arizona courts' denial of relief was contrary to and an unreasonable application of *Miller*. The State timely appeals.

## STANDARDS OF REVIEW

We review de novo the district court's grant of habeas relief. *Jones v. Davis*, 8 F.4th 1027, 1035 (9th Cir. 2021). We review the state court's decision through the lens of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Habeas relief is available only if the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d)(1). We consider the last reasoned decision by the state courts, *Demetrulias v. Davis*, 14 F.4th 898, 905 (9th Cir. 2021), here, the Arizona Court of Appeals' decision quoted above. Finally, in conducting our review, we consider only Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (emphasis and internal quotation marks omitted). The state court denied relief to Petitioner in 2015, several years after the Supreme Court decided *Miller*, 567 U.S. 460.

## DISCUSSION

In *Miller*, the Supreme Court considered state statutes that required the sentencing judge to impose a mandatory sentence of life without parole. *Id.* at 465–69. Because sentencing judges lacked discretion to choose anything other than a mandatory sentence of life without parole, the challenged state statutes prohibited a sentencing judge from considering any of the defendant's individual characteristics, including the defendant's youth and its attendant circumstances. *Id.* at 466, 469 (citing Ark. Code Ann. § 5-4-104(b) (1997) & Ala. Code §§ 13A-5-40(a)(9), 13A-6-2(c) (1982)). The Court held that such statutes, when applied

to defendants who were juveniles at the time of their crimes, violate the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 465.

The Court's reasoning rested on the confluence of two lines of cases. *Id.* at 470. The first set of cases, *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010), "establish that children are constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471. "[Y]outh matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole." *Id.* at 473. The "characteristics of youth . . . weaken rationales for punishment [and] *can* render a life-without-parole sentence disproportionate." *Id.* (emphasis added). State statutes that impose mandatory life sentences without any possibility of parole "prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Id.* at 474. The second line of cases, beginning with *Woodson v. North Carolina*, 428 U.S. 280 (1976), "demand[s] individualized sentencing when imposing the death penalty." *Miller*, 567 U.S. at 475. The challenged state statutes' "mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 476. Together, the two lines of cases "teach that in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult." *Id.* at 477.

The Court did not ban sentences of life without parole for juveniles. But the Court held that, before imposing a sentence of life without parole, the sentencer must consider the defendant's individual characteristics, including his or her youth. The sentencer must "take into account how

children are different, and how those differences counsel against irrevocably sentencing them to a lifetime of prison." *Id.* at 480. The Court's decision "mandates only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing [life without parole]." *Id.* at 483.

Four years later, the Supreme Court held that *Miller* applies retroactively. *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016). And the Court recently held that *Miller* does not mandate any particular factual finding; it requires only that the sentencer take into account youth and the mitigating qualities of youth. *Jones v. Mississippi*, 141 S. Ct. 1307, 1311 (2021); *see also United States v. Briones*, 18 F.4th 1170, 1175–76 (9th Cir. 2021) (holding, on remand from the Supreme Court, that the sentencing court complied with *Miller* even though it did not make a factual finding of permanent incorrigibility). But because those decisions came after the state court denied relief to Petitioner, we do not consider them as part of our AEDPA review. *Greene*, 565 U.S. at 38. Instead, we consider whether the state court's denial of post-conviction relief was contrary to, or an unreasonable application of, *Miller* at the time of the state court's decision.

*Miller* requires, for a juvenile offender, an individualized sentencing hearing during which the sentencing judge assesses whether the juvenile defendant warrants a sentence of life with the possibility of parole. Here, the sentencing judge thoughtfully considered whether Petitioner warranted a sentence of life with the possibility of *any* form of release, took into account Petitioner's youth and the characteristics of young people, and concluded that Petitioner warranted a sentence of life without the possibility of release. The state court did not apply Supreme Court precedent unreasonably

when it concluded that the sentencing hearing complied with *Miller*.

Petitioner's argument to the contrary rests entirely on an analysis of the state's statutory scheme in 1998, the year of the murder. As described above, Arizona Revised Statutes section 13-703(A) listed, in 1998, two potential penalties for Petitioner's conviction of first-degree murder once the plea agreement took the death penalty off the table: (1) life without the possibility of any form of release; and (2) life with the possibility of release, including parole, after 25 years of imprisonment. Petitioner points out that, at the time of the murder in 1998 and at the time of the sentencing in 1999, persons serving life sentences for crimes committed in 1994 or later were ineligible for parole. In 1993, the Arizona legislature had eliminated parole for crimes committed in 1994 or later, and the legislature had replaced parole with a credit system for early release. 1993 Ariz. Sess. Laws, ch. 255, §§ 86, 88; *see State v. Vera*, 334 P.3d 754, 758–59 (Ariz. Ct. App. 2014) (describing the change). Moreover, the early-release credits were unavailable for persons serving a life sentence, even if that sentence nominally included a possibility of parole. *Vera*, 334 P.3d at 760 & n.8.

Petitioner asserts that, applying the 1994 legal change to Petitioner's 1999 sentencing, there was no *practical* difference to Petitioner between a sentence of natural life and a sentence of life with the possibility of release. A sentence of natural life would permit no form of release, and a sentence of life with the possibility of release would allow commutation, but not parole. In Petitioner's view, then, both sentences would result, as a practical matter, in a sentence of life without parole. Indeed, the Supreme Court listed Arizona as among the jurisdictions that require sentences of

life without parole. *Miller*, 567 U.S. at 486 n.13. Petitioner urges us to conclude that his sentencing hearing thus violated *Miller*.

We hold that the state court reasonably concluded that, despite this practical result, *Miller* does not mandate a resentencing in the circumstances of this case. *Miller* addressed situations in which the sentencing authority imposed a sentence of life without parole *automatically*, with no individualized sentencing considerations whatsoever. *See, e.g.*, *id.* at 466 (Arkansas sentencing judge's statement "that 'in view of the verdict, there's only one possible punishment'" (brackets omitted)); *id.* at 469 (citing *Miller v. State*, 63 So. 3d 676, 691 (Ala. Crim. App. 2010)); *Miller*, 63 So. 3d at 691 (Alabama sentencing court's imposition of life without parole without "individualized sentencing or consideration of [evidence in] mitigation"). *Miller*'s focus was on requiring the sentencing judge, before sentencing a juvenile to a lifetime of imprisonment, "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 U.S. at 480. That precise procedure was followed here, albeit with respect to the possibility of *any* form of release, not just the possibility of parole (a single form of release). Given *Miller*'s focus on the required procedure, and given the sentencing judge's extensive deliberation here as to whether Petitioner warranted a possibility of release, the state post-conviction court reasonably distinguished *Miller*.

The sentencing judge here, after fully considering Petitioner's age and other relevant considerations, concluded that Petitioner did not warrant *any* form of release. Necessarily, then, the sentencing judge concluded that Petitioner did not warrant a possibility of parole, which is

one form of release. Nothing in the record suggests that the precise form of potential release at issue had any effect on the sentencing judge's exercise of discretion. Much to the contrary, the record makes clear that the sentencing judge (and everyone else involved) genuinely, if mistakenly, thought that he was considering a sentence of life with the possibility of *parole*.[1] The state post-conviction court reasonably applied *Miller* in concluding that no resentencing was warranted here.

Petitioner nevertheless contends that the state court's rejection of his *Miller* claim was unreasonable because, had the court nominally imposed a sentence of life with the possibility of release generally or the possibility of parole specifically, Arizona's laws would have prevented him from ever being eligible for parole. Petitioner's assertion about the application of state law is questionable at best. Arizona's more recent statutory changes and caselaw make it nearly certain that, had the sentencing judge allowed release or parole after 25 years, Petitioner would, in fact, be eligible for parole. *See, e.g.*, Ariz. Rev. Stat. § 13-716 (enacted in 2014) ("Notwithstanding any other law, a person who is sentenced to life imprisonment with the possibility of release after serving a minimum number of calendar years for an offense that was committed before the person attained eighteen years

---

[1] The misunderstanding by the sentencing judge and everyone else involved in Petitioner's case was apparently common. The Arizona reporter is full of cases in which the sentencing judge mistakenly thought that he or she had discretion to allow parole. *E.g.*, *Chaparro v. Shinn*, 459 P.3d 50, 52 (Ariz. 2020); *Vera*, 334 P.3d at 755. A district court recently noted that, "[d]espite the elimination of parole, prosecutors continued to offer parole in plea agreements, and judges continued to accept such agreements and impose sentences of life with the possibility of parole." *Viramontes v. Att'y Gen.*, No. CV-16-00151-TUC-RM, 2021 WL 977170, at *1 (D. Ariz. Mar. 16, 2021).

of age is eligible for parole on completion of service of the minimum sentence, regardless of whether the offense was committed on or after January 1, 1994."); *Vera*, 334 P.3d at 756–61 (describing the application of section 13-716); *see also Chaparro*, 459 P.3d at 52–55 (holding that a defendant who received a sentence of life with the possibility of parole in 1995 was parole-eligible, notwithstanding the legislature's elimination of parole); Ariz. Rev. Stat. § 13-718(A) (enacted in 2018) (providing that a defendant whose post-1993 plea agreement stipulated to parole eligibility is parole-eligible, notwithstanding the legislature's elimination of parole).

But even assuming that Petitioner's doubtful assertion about state law is correct, Petitioner has shown only that a hypothetical defendant who received a lenient sentence would have a strong *Miller* claim.  That is, if a sentencing judge determined that a hypothetical defendant *warranted* the possibility of release or parole, but the state courts nevertheless refused to permit parole, then that hypothetical defendant would have a strong *Miller* claim.  But the reason why such a *Miller* claim would be viable proves why this hypothetical does not help Petitioner:  that *Miller* claim would have merit *because the sentencing judge concluded that the defendant warranted a possibility of release or parole*.  Here, by contrast, the sentencing judge determined—considering Petitioner's age and the characteristics of youth—that Petitioner warranted a sentence without any possibility of any form of release.  Accordingly, in Petitioner's circumstances, it was reasonable for the state court to distinguish *Miller*.

**REVERSED AND REMANDED.**