**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FREDDIE CRESPIN,
            *Petitioner-Appellee,*

v.

CHARLES L. RYAN; Attorney General for the State of Arizona,
            *Respondents-Appellants.*

No. 18-15073

D.C. No.
2:15-cv-00992-SPL

OPINION

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted February 6, 2019
Submission Vacated March 19, 2019
Resubmitted August 12, 2022
Phoenix, Arizona

Filed August 19, 2022

Before: Michael Daly Hawkins, Milan D. Smith, Jr., and
Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's grant of a conditional writ of habeas corpus to Freddie Crespin, who in 1995 was charged in Arizona with first-degree murder committed when he was sixteen years old.

Because the Supreme Court had not yet held that the death penalty could not be imposed on defendants younger than eighteen when the crime occurred, Crespin faced a possible capital sentence if convicted. To avoid that possibility, he entered into a plea agreement under which he agreed to a sentence of life without the possibility of parole (LWOP). In *Miller v. Alabama*, 567 U.S. 460 (2012), the Supreme Court held that the imposition of LWOP for those convicted of a crime committed while under the age of eighteen violated the Eighth Amendment under some circumstances. Crespin unsuccessfully sought post-conviction relief (PCR) in Arizona state court. He then filed a 28 U.S.C. § 2254 habeas corpus petition. While that petition was pending, the Supreme Court held in *Montgomery v. Louisiana*, 577 U.S. 190 (2016), that the *Miller* rule was retroactive. The district court then granted the conditional writ.

The panel held that the plea agreement, in which Crespin waived the right to appeal "the judgment and sentence to a higher court," did not waive Crespin's right to pursue a PCR challenge of his sentence. Nor did Crespin's guilty plea

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

waive his ability to collaterally attack the constitutionality of his LWOP sentence, as Crespin was unaware of the Eighth Amendment right announced in *Miller* when he entered into the plea agreement, let alone that he could not be sentenced to death under the not-yet announced rule in *Roper v. Simmons*, 543 U.S. 551 (2005).

The panel therefore turned to the merits of Crespin's *Miller* claim. The Arizona Court of Appeals found that because the trial court had the discretion to reject the plea agreement if it found the stipulated sentence inappropriate, and the judge was aware of Crespin's youth and the circumstances of the crime before accepting the agreement, Crespin's *Miller* rights were not violated. The panel held that this was an unreasonable application of *Miller*. The panel explained that under *Miller*, a sentencer must have discretion to impose a lesser sentence than LWOP. Here, the trial judge made it clear that he did not have this discretion. Because the judge correctly recognized that his only sentencing option was LWOP, Crespin's sentencing violated the Eighth Amendment. The panel concluded that there was at least a reasonable possibility that a sentencing proceeding conducted in accordance with *Miller*'s requirements would result in a non-LWOP sentence.

**COUNSEL**

Terry M. Crist III (argued), Kristina Reeves, and Joshua C. Smith, Assistant Attorneys General; J.D. Nielsen, Habeas Unit Chief; Joseph T. Maziarz, Chief Counsel; Mark Brnovich, Attorney General; Office of the Attorney General, Phoenix, Arizona; for Respondents-Appellants.

Molly Brizgys (argued), Mitchell Stein Carey Chapman PC, Phoenix, Arizona; Karen S. Smith, Arizona Justice Project, Phoenix, Arizona; for Petitioner-Appellee.

**OPINION**

HURWITZ, Circuit Judge:

In 1995 Freddie Crespin was charged in Arizona with first-degree murder. The crime was committed when Crespin was sixteen years old, but because the Supreme Court had not yet held that the death penalty could not be imposed on defendants younger than eighteen when the crime occurred, *see Roper v. Simmons*, 543 U.S. 551 (2005), Crespin faced a possible capital sentence if convicted. To avoid that possibility, he entered into a plea agreement under which he agreed to a sentence of life without the possibility of parole ("LWOP"). After the Supreme Court decided in *Miller v. Alabama*, 567 U.S. 460 (2012), that the imposition of LWOP for those convicted of a crime committed while under the age of eighteen violated the Eighth Amendment under some circumstances, Crespin unsuccessfully sought post-conviction relief ("PCR") in Arizona state court. He then filed a 28 U.S.C. § 2254 habeas corpus petition, and the district court granted a conditional writ. We affirm.

I.

Betty Janecke was murdered in Apache Junction, Arizona in 1995. Crespin was promptly arrested with several others and charged with numerous crimes, including first-degree murder. At the time, Arizona law provided three possible sentences for those convicted of first-degree murder: death, LWOP, or life with the possibility of release.

Ariz. Rev. Stat. § 13-703(A) (1998).[1] To avoid the possibility of a death sentence, Crespin pleaded guilty to first-degree murder; the plea agreement required an LWOP sentence. The plea agreement waived Crespin's "right to appeal the judgment and sentence to a higher court."

The state trial judge twice accepted the plea agreement, first in March 1998 and again in September 1998.[2] At the September hearing the judge stated that "the sentence that's provided, no matter what testimony is presented on your behalf, and I know [your lawyer] wants your family members to talk to me, once I've accepted the plea agreement, you'll receive a life sentence, which is natural life sentence with no possibility of parole, commutation of sentence, et cetera." The court also emphasized that "there is no sentence to be given other than what's called for in the plea agreement."

The court then nonetheless allowed Crespin's mother to speak. She stated that Crespin was a "wonderful son," an

---

[1] Because Arizona had abolished parole, *see State v. Vera*, 334 P.3d 754, 758–59 (Ariz. Ct. App. 2014), the only possibility of release for those sentenced to the third alternative was executive clemency, *see State v. Wagner*, 510 P.3d 1083, 1084 (Ariz. Ct. App. 2022). Arizona law was subsequently amended to make all defendants convicted of first-degree murders committed while under the age of eighteen previously sentenced to life with the possibility of release eligible for parole. Ariz. Rev. Stat. § 13-716.

[2] After the trial court accepted the plea agreement in March 1998, new counsel filed a motion to vacate that order, arguing it was the result of undue pressure from previous counsel. Crespin subsequently withdrew the motion to vacate and the trial court confirmed at the September hearing that Crespin wanted to go forward with it, had spoken to his attorney about his rights, and was aware of the agreed-upon sentence.

"honor roll student," "never a violent person," and that he would have never committed the murder if he had not been "under the influence of Barry and under the influence of drugs." In response, the court told Ms. Crespin that it had read letters that had been submitted on Crespin's behalf, including one from his school principal, but reiterated that "there is no option on the nature of the sentence." After asking counsel and the probation officer whether the imposition of LWOP was "justified," the Court stated:

> Mr. Crespin, what I've done is previously accepted your plea agreement and made a finding, which I'll make again, that you are guilty of the offense of murder in the first degree, in violation of A.R.S. 13-1105, 13-1101, 13-703, and 13-801, a class 1 dangerous felony.
>
> The punishment provided for that offense only consists of three alternative sentences. And pursuant to the recommendations of the presentence report, your plea agreement and my independent view of the underlying facts of this offense, which is set forth in the official version of the presentence report, and my independent review of the provisions of A.R.S. 13-703, including mitigating and aggravating factors, I'm not going to specifically list those here today, but I will find that the aggravating factor of the nature of this murder, that is that it was heinous and cruel, that effect in itself is reason for imposing the second highest of the three penalties allowed and that is provided in your plea agreement.

> So as punishment, sir, I am going to order that you serve a life term in the Arizona Department of Corrections with no possibility of parole or release until the completion of your natural life.

The court then confirmed that Crespin understood he could not "file a direct appeal to a higher Court," but noted that Crespin had not given up his "right to file a petition for post-conviction relief."

After the Supreme Court decided *Miller*, Crespin filed a PCR petition in the Superior Court pursuant to Arizona Rule of Criminal Procedure 32, arguing that his LWOP sentence was unconstitutionally imposed. The Superior Court denied the petition. Crespin then filed a discretionary petition for review in the Arizona Court of Appeals. *See* Ariz. R. Crim. P. 32.16. That court granted review but denied relief in an unpublished memorandum. *State v. Crespin*, No. 2 CA-CR 2014-0254-PR, 2014 WL 7345697, at *3 (Ariz. Ct. App. Dec. 26, 2014). In relevant part, the court held that the LWOP sentence was constitutional because it was "clear from the record the court not only understood there were multiple sentencing options for first-degree murder, but that it considered those options in the context of Crespin's character, age and the nature of the offense before deciding if it would accept the plea agreement." *Id*. Because the sentencing court "had the discretion to reject the plea agreement if it deemed the stipulated sentence inappropriate," the Court of Appeals perceived no *Miller* error. *Id*. The Arizona Supreme Court denied a petition for review.

In 2015, Crespin filed a 28 U.S.C. § 2254 habeas corpus petition. While that petition was pending, the Supreme

Court held that the *Miller* rule was retroactive. *Montgomery v. Louisiana*, 577 U.S. 190 (2016). The district court then granted a conditional writ. *See Crespin v. Ryan*, No. CV-15-00992-PHX-SPL (ESW), 2016 WL 10519137, at \*9 (D. Ariz. Oct. 21, 2016). This timely appeal followed.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). Because Crespin's habeas corpus petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant relief only if the decision of the Arizona Court of Appeals was: (1) "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## II.

*Miller* held that sentencing schemes requiring LWOP sentences for juveniles convicted of homicide violate the Eighth Amendment. *See* 567 U.S. at 489. The Court did not outright "foreclose a sentencer's ability to [impose LWOP on juveniles] in homicide cases," but required that the sentencer be able to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. The Court characterized this as an "individualized consideration" and stated that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* at 479–80.

In making the *Miller* rule retroactive, *Montgomery* emphasized that it was not only procedural, but also substantive. *See* 577 U.S. at 209. Reinforcing the language

of *Miller,* the Court stated that LWOP is inappropriate "for all but the rarest of juvenile offenders." *Id*. *Montgomery* stressed that a sentencer must not only "consider a juvenile offender's youth and attendant characteristics before determining that life without parole is a proportionate sentence," *id.* at 209–10, but also the offender's capacity for change, and that LWOP should only be imposed on an offender "whose crimes reflect permanent incorrigibility," *id*. at 209, not on "a child whose crime reflects unfortunate yet transient immaturity," *id.* at 208 (cleaned up).

However, *Jones v. Mississippi*, 141 S. Ct. 1307, 1321 (2021), while expressly disclaiming that it was overruling either *Miller* or *Montgomery*, narrowed the potential sweep of those decisions.  The Court explained that under *Miller*, "an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole, but only if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment." *Id.* at 1311.  The Court stressed that *Miller* "mandated only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing" LWOP and did not require a factual finding that a defendant is permanently incorrigible or an "on-the-record sentencing explanation with an implicit finding that the defendant is permanently incorrigible." *Id.* (cleaned up).  The "key assumption of both *Miller* and *Montgomery*," the Court explained, "was that discretionary sentencing allows the sentencer to consider the defendant's youth, and thereby helps ensure that life-without-parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age." *Id.* at 1318.

Since *Jones*, we have twice addressed juvenile LWOP sentences in published opinions.  In *United States v. Briones*,

we affirmed an LWOP sentence imposed at a post-*Miller* resentencing hearing.  35 F.4th 1150, 1153, 1159 (9th Cir. 2021).  We rejected the argument that *Miller* required a finding of incorrigibility before LWOP could be imposed, emphasizing that "a 'discretionary sentencing system is both constitutionally necessary *and constitutionally sufficient*,' because such discretion 'suffices to ensure individualized consideration of a defendant's youth.'"  *Id.* at 1156 (quoting *Jones*, 141 S. Ct. at 1313, 1321).  Briones's hearing, at which the judge explained he considered the defendant's youth, therefore was constitutional because "a sentencer with discretion to consider youth 'necessarily *will* consider' it, 'especially if,'—as here—'defense counsel advance[d] an argument based on the defendant's youth.'"  *Id.* (quoting *Jones*, 141 S. Ct. at 1319).  And in *Jessup v. Shinn*, we explained that *Miller* "requires, for a juvenile offender, an individualized sentencing hearing during which the sentencing judge assesses whether the juvenile defendant warrants a sentence of life with the possibility of parole."  31 F.4th 1262, 1266 (9th Cir. 2022).  We held that Jessup's sentencing hearing did not violate *Miller* because the sentencing judge considered the petitioner's "age and other relevant considerations" before concluding that he did not warrant any form of release.  *Id.* at 1267.

## III.

The state first contends that Crespin's plea agreement waived any habeas *Miller* challenge and that, in any event, *Miller* does not apply when a defendant chooses to forego the opportunity to argue that mitigating evidence requires a non-LWOP sentence by agreeing to a stipulated sentence. The Arizona Court of Appeals did not address waiver, so AEDPA deference does not apply to our analysis of this

issue. *See Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008). We find no waiver.

The starting point is, of course, Crespin's plea agreement. That agreement only waived the right to appeal "the judgment and sentence to a higher court." As the trial court explained, this meant Crespin could not "file a direct appeal to a higher Court," but had not given up his "right to file a petition for post-conviction relief." Indeed, in so providing, the agreement simply echoed Arizona law. A defendant pleading guilty in a noncapital case in Arizona does not have the right to appeal a sentence or conviction. *See* Ariz. Rev. Stat. § 13-4033(B); Ariz. R. Crim. P. 17.1(e). Any such challenges must be instead pursued through an "of-right" PCR proceeding. *See* Ariz. R. Crim. P. 32.1; *State v. Shrum*, 203 P.3d 1175, 1177 (Ariz. 2009). That is what Crespin did here.

We have made "clear . . . that a waiver of collateral attack must be express, and that a plain waiver of appeal does not suffice." *Lemke v. Ryan*, 719 F.3d 1093, 1096 (9th Cir. 2013) (holding that a waiver that did "not mention collateral attack" did not bar a § 2254 petition). Moreover, a

> waiver of the right to appeal a sentence does not apply if (1) the defendant raises a challenge that the sentence violates the Constitution; (2) the constitutional claim directly challenges the sentence itself; and (3) the constitutional challenge is not based on any underlying constitutional right that was expressly and specifically waived by the appeal waiver as part of a valid plea agreement.

*United States v. Wells*, 29 F.4th 580, 587 (9th Cir. 2022). Thus, the plea agreement did not waive Crespin's right to pursue a PCR challenge of his sentence.

Nor did Crespin's guilty plea waive his ability to collaterally attack the constitutionality of his LWOP sentence. The general bar on collaterally attacking guilty pleas is "predicated on the idea that a valid guilty plea removes the issue of factual guilt from the case." *Lemke*, 719 F.3d at 1097 (cleaned up). But Crespin does not challenge his conviction, only his sentence. The cases the State relies upon, *Brady v. United States*, 397 U.S. 742, 752–53 (1970), and *Dingle v. Stevenson*, 840 F.3d 171, 173 (4th Cir. 2016), involved challenges to unconstitutional *convictions*.[3]

Moreover, a defendant cannot voluntarily and intelligently waive a constitutional right of which he is unaware. *See Iowa v. Tovar*, 541 U.S. 77, 81 (2004) ("Waiver . . . of constitutional rights in the criminal process generally, must be a knowing, intelligent act done with sufficient awareness of the relevant circumstances.") (cleaned up); *see also Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (stating that waiver is an "intentional relinquishment or abandonment of a known right or privilege"). Crespin was of course unaware of the Eighth Amendment right announced in *Miller* when he entered into the plea agreement, let alone that he could not be sentenced to death under the not-yet announced rule of *Roper*. *See Stevens v.*

---

[3] *United States v. Abarca*, 985 F.2d 1012 (9th Cir. 1993), also cited by the State, is not to the contrary. Abarca waived an appeal of his *federal* conviction on the condition he receive a Guidelines sentence and then argued on habeas that he should have received a lesser one. *Id.* at 1013–14. In federal court, unlike Arizona, a defendant may directly appeal a sentence. *See* 18 U.S.C. § 3742.

*State*, 422 P.3d 741, 748 (Okla. Crim. App. 2018) (stating that the petitioner "could not have been aware that he had the right to an individualized sentencing hearing because this right was not recognized until the Supreme Court announced it in *Miller*"), *overruled on other grounds by White v. State*, 499 P.3d 762 (Okla. Crim. App. 2021).

The Fourth Circuit has declined to find waiver under identical circumstances. *See Malvo v. Mathena*, 893 F.3d 265, 277 (4th Cir. 2018), *abrogated on other grounds by Jones*, 141 S. Ct. at 1313. Malvo had entered into a plea agreement with a stipulated LWOP sentence that waived his right to "appeal any decisions made by" the trial court. *Id.* at 270. The Fourth Circuit noted that there was no "*express waiver of Malvo's right to challenge the constitutionality of his sentence in a collateral proceeding in light of future Supreme Court holdings.*" *Id.* at 277. The court also "decline[d] to hold that Malvo implicitly waived his right to argue, based on intervening Supreme Court holdings, that his sentences were ones that the State could not constitutionally impose on him." *Id.* (citing *Class v. United States*, 138 S. Ct. 798, 804–05 (2018)). We find no reason to reach a different conclusion here and therefore turn to the merits of Crespin's *Miller* claim.[4]

---

[4] We question whether an express waiver of *Miller* rights would be enforceable. *See Malvo*, 893 F.3d at 276 ("[I]t is far from clear that a broad waiver of a *substantive* constitutional right . . . would even be enforceable."); *Stevens*, 422 P.3d at 747 (reasoning that, even when a defendant pleads guilty, "after *Miller*, a court is without the power to sentence a juvenile offender to life without the possibility of parole without the benefit of an individualized sentencing hearing"). But we need not today decide the issue.

IV.

"A hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. The hearing does not replace but rather gives effect to *Miller*'s substantive holding." *Montgomery*, 577 U.S. at 210 (citation omitted). As *Jones* emphasized, a sentencer must "follow a certain process—considering an offender's youth and attendant characteristics—before imposing" an LWOP sentence. 141 S. Ct. at 1311.

Crespin's sentencing did not comply with these critical requirements. Indeed, the sentencing judge recognized as much. He repeatedly stated that because he had previously approved a plea agreement providing for LWOP, nothing presented at the sentencing hearing could affect Crespin's sentence. The judge recognized that accepting the plea agreement automatically determined the sentence, no matter what Crespin's "attendant characteristics" might be.

The Arizona Court of Appeals nonetheless found that because the trial court had the discretion to reject the plea agreement if it found the stipulated sentence inappropriate, and the judge was aware of Crespin's youth and the circumstances of the crime before accepting the agreement, Crespin's *Miller* rights were not violated. This was an unreasonable application of *Miller*.

The sentencing judge of course had the discretion under Arizona law to either accept or reject the plea agreement. *See* Ariz. R. Crim. P. 17.4(d); *Espinoza v. Martin*, 894 P.2d 688, 690 (Ariz. 1995) (requiring a judge to "consider the merits of [a plea] agreement in light of the circumstances of the case" and "exercise his or her discretion with regard to

that agreement"); *State v. Superior Ct.*, 611 P.2d 928, 930 (Ariz. 1980) (explaining that a court must "review the plea agreement to see if the ends of justice and the protection of the public are being served by such agreement"). The issue before us, however, is not whether the trial judge complied with state law, but rather whether the procedural and substantive requirements of *Miller* were satisfied.

They were not. The trial judge simply considered whether the stipulated LWOP sentence could be "justified." *Miller* requires more. Under *Miller*, a sentencer must also have the discretion to impose a lesser sentence than LWOP. *Jones*, 141 S. Ct. at 1311. The trial judge made it clear that he did not have this discretion, warning Crespin that it did not matter what testimony was presented on his behalf and telling Crespin's mother that no matter what she might say, there was "no sentence to be given other than what's called for the in the plea agreement." Although the judge had the discretion to determine whether this was a plea agreement that he *could* accept, he did not have the discretion to choose which sentence he felt was *best* for Crespin. *See Malvo*, 893 F.3d at 276 (granting habeas relief despite state court's power to accept or reject the plea agreement). Indeed, if the judge rejected the agreement, he could not have given Crespin a non-LWOP sentence; the most he could have done without the consent of the parties was reject the guilty plea and proceed to trial. *See State v. Oatley*, 847 P.2d 625, 626–27 (Ariz. Ct. App. 1993). Because the judge quite correctly recognized that his only sentencing option was LWOP, Crespin's sentencing violated the Eighth Amendment.

## C.

To warrant habeas relief, the constitutional error must have "had a substantial and injurious effect or influence" on Crespin's sentence. *Brecht v. Abrahamson*, 507 U.S. 619,

637 (1993) (cleaned up). "There must be more than a 'reasonable possibility' that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (quoting *Brecht*, 507 U.S. at 637).

The State argues that Crespin cannot show the required prejudice because of the serious nature of his crime, his lack of remorse, and findings of psychologists that he would likely murder again if given the opportunity. But, because of the plea agreement, Crespin had no reason to present evidence arguing for a lesser sentence, particularly because rejection of the agreement would have put him in jeopardy of a death sentence. And, even on the thin record of this case, there was evidence that might have supported a lesser sentence. Crespin was only 16 when the crime was committed. His mother testified that Crespin had succumbed to negative peer influences, and his principal explained that Crespin was an "adolescent rebel" with "tremendous potential." The trial judge, however, was not free to give weight to these facts and others under the plea agreement. There is thus at least a "reasonable possibility" that a sentencing proceeding conducted in accordance with *Miller*'s requirements would result in a non-LWOP sentence.

**AFFIRMED.**