NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CLINT RAY PIPER, *Appellant*.

No. 1 CA-CR 23-0034
FILED 11-14-2023

Appeal from the Superior Court in Yavapai County
No. V1300CR202180786
The Honorable John David Napper, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

C. Kenneth Ray II, P.L.L.C., Prescott
By C. Kenneth Ray, II
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Michael S. Catlett joined.

_____

**C R U Z**, Judge:

¶1        Clint Ray Piper appeals his convictions and sentences for two counts of aggravated assault, four counts of disorderly conduct, and one count of threatening or intimidating, a domestic violence offense.  For the following reasons, we vacate Piper's convictions and sentences for two of the disorderly conduct counts and affirm his convictions and sentences for the remaining counts.

## FACTUAL AND PROCEDURAL HISTORY

¶2        One evening in December 2021, Piper, his girlfriend, C.W., and his roommate, B.G., were socializing at Piper's home in Cottonwood after an afternoon of drinking.  Piper saw C.W. and B.G. having sex outside while he was in the house.  Piper took a swing at B.G. and yelled at him.  C.W. went inside, and Piper pushed her down, causing her to hit her head on a dresser in a bedroom.  He threw her onto a bed and started choking her.  When B.G. entered the bedroom, Piper released C.W.'s throat and left the room after stating he was getting a gun.  Piper returned with a handgun.

¶3        C.W. left the bedroom, and Piper threw her on the ground and stomped on her knee.  He had a gun in his hand.  Piper told C.W. he had "[taken] care of B.G," called her a whore, and pointed the gun at her face.  C.W. fled the house.

¶4        Cottonwood police were dispatched to the area near Piper's home after receiving reports of shots fired.  While parked in a parking lot, officers were approached by C.W., who was frantic, frightened, and disheveled.  After interviewing C.W. at the police station, officers became concerned about B.G.'s safety.

¶5        Five officers responded to Piper's home. They knocked on the front door, announced themselves, and told Piper to come outside.  Piper eventually opened the front door and shouted expletives at the officers before slamming the door shut.  Shortly thereafter, officers heard a shotgun rack and saw the front door open. Piper was holding a shotgun.  He pointed

it to where Officers Leedham and Laube had been standing, and then swept the gun in Officer Olofson's direction. When officers ordered Piper to drop the weapon, he cursed at them and went back inside. About forty-five minutes after the police arrived at Piper's home, he finally came out unarmed but ignored their commands that he stop walking. An officer shot Piper with beanbag rounds and arrested him.

**¶6**        A grand jury indicted Piper for five counts of aggravated assault (counts 1-3 Officers Leedham, Laube, and Olofson, respectively, count 5—C.W., count 6—B.G.), one count of discharge of a firearm at a structure (count 4), five counts of disorderly conduct (count 7—C.W., count 8—B.G., count 9—Officer Leedham, count 10—Officer Laube, count 11—Officer Olofson), one count of threatening or intimidating (count 12—C.W.), and one count of assault (count 13—C.W.).

**¶7**        During trial, the State moved to dismiss both counts pertaining to B.G. (counts 6 and 8), and the superior court dismissed those counts. At the close of the State's evidence, Piper moved to dismiss the remaining counts pursuant to Arizona Rule of Criminal Procedure ("Rule") 20. After argument, the superior court dismissed count 3.

**¶8**        The jury found Piper not guilty of counts 4, 5, and 13 but found him guilty of the remaining counts. The superior court sentenced Piper to 10.5 years in prison for counts 1 and 2, to run concurrently. It sentenced him to 2.25 years in prison for count 11, to run concurrently with counts 1 and 2. The court sentenced Piper to 2.25 years in prison for count 7, to run consecutively to counts 1, 2, and 11. It sentenced him to 2.25 years in prison for counts 9 and 10, to run concurrently with count 7. Finally, the court sentenced Piper to 64 days in jail with credit for 64 days served for count 12.

**¶9**        Piper timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A), 13-4031, and -4033(A).

**DISCUSSION**

I.        Double Jeopardy

**¶10**        The State concedes, and we agree, that counts 9 and 10 should be vacated because they are lesser included offenses of counts 1 and 2. Piper did not raise this issue below. Accordingly, we review for fundamental error. *State v. Robinson*, 253 Ariz. 121, 142, ¶ 64 (2022).

¶11      For count 1, Piper was convicted of aggravated assault for intentionally placing Officer Leedham in reasonable apprehension of imminent physical injury with a deadly weapon. For count 9, he was convicted of disorderly conduct for knowingly or intentionally disturbing Officer Leedham's peace by recklessly handling, displaying, or discharging a deadly weapon. For count 2, Piper was convicted of aggravated assault for intentionally placing Officer Laube in reasonable apprehension of imminent physical injury with a deadly weapon. For count 10, he was convicted of disorderly conduct for knowingly or intentionally disturbing Officer Laube's peace by recklessly handling, displaying, or discharging a deadly weapon.

¶12      Disorderly conduct by recklessly displaying or handling a firearm is a lesser included offense of aggravated assault by intentionally placing the victim in reasonable apprehension of imminent physical injury using a deadly weapon. *State v. Erivez*, 236 Ariz. 472, 474-75, ¶¶ 6, 15 (App. 2015). Convictions for both a greater and lesser offense violate double jeopardy principles and constitute fundamental error. *State v. McGill*, 213 Ariz. 147, 153, ¶ 21 (2006). We therefore vacate Piper's convictions and sentences for counts 9 and 10. *See State v. Chabolla-Hinojosa*, 192 Ariz. 360, 365, ¶¶ 21-22 (App. 1998).

II.     Rule 20 Motion

¶13      Piper argues his convictions for counts 9, 10, and 11 should be vacated because the superior court erroneously denied his Rule 20 motion. *See* Rule 20(a)(1) ("After the close of evidence on either side, and on motion or on its own, the court must enter a judgment of acquittal on any offense charged in an indictment, information, or complaint if there is no substantial evidence to support a conviction."). As noted above, we agree that counts 9 and 10 should be vacated, thus, his argument is moot as to those convictions.

¶14      For count 11, Piper was convicted of disorderly conduct for knowingly or intentionally disturbing Officer Olofson's peace by recklessly handling, displaying, or discharging a deadly weapon. *See* A.R.S. § 13-2904(A)(6). According to Piper, there was insufficient evidence to show that he knowingly or intentionally disturbed the peace or quiet of Officer Olofson because "dealing with unruly and misbehaving individuals in the community" was part of his job as a law enforcement officer.

¶15      We review the denial of a Rule 20 motion de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Substantial evidence is "proof that

reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *Id.* at ¶ 16 (citation and internal quotation marks omitted). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603 (1997). We view the facts in the light most favorable to sustaining the verdicts and resolve all conflicts in the evidence against the defendant. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013); *State v. Bustamante*, 229 Ariz. 256, 258, ¶ 5 (App. 2012). "[I]n reviewing the sufficiency of the evidence, we do not distinguish circumstantial from direct evidence." *State v. Borquez*, 232 Ariz. 484, 487, ¶ 11 (App. 2013).

**¶16** Substantial evidence supports the jury's verdict. The evidence showed that when the officers instructed Piper to come outside, he refused to do so. Instead, Piper, who was "angry and upset," swore at the officers, racked a shotgun and pointed it out the front door, sweeping it in Officer Olofson's direction. Officer Olofson testified that he was "worried" Piper would try to kill him or Officers Leedham and Laube. Piper cites no relevant authority for his argument that a law enforcement officer cannot be the victim of disorderly conduct, and we are not aware of any such authority. Viewing the evidence in the light most favorable to the State, a rational juror could have found the essential elements of disorderly conduct beyond a reasonable doubt. *See West*, 226 Ariz. at 562, ¶ 15.

**¶17** Because substantial evidence reasonably supported the conclusion that Piper committed disorderly conduct, the superior court properly denied his Rule 20 motion.

III. Jury Question and Instruction

**¶18** Piper next argues the superior court violated his right to a fair trial when it instructed the jury in response to a jury question inquiring whether Officer Olofson had a prior contact with Piper. He contends the court, the prosecutor, and defense counsel all "agreed to mislead and deceive the [j]ury," and the court erred by failing to sua sponte declare a mistrial.

**¶19** Because Piper did not object to the superior court's proposed instruction in response to the jury question, we review for fundamental error. *See Robinson*, 253 Ariz. at 142, ¶ 64. "To prevail under this standard of review, a defendant must establish both that fundamental error exists and that the error . . . caused him prejudice." *State v. Robles*, 213 Ariz. 268,

272, ¶ 12 (App. 2006) (citation omitted). "A defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). "Prejudice is a fact-intensive inquiry, the outcome of which will depend . . . upon the type of error that occurred and the facts of a particular case." *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13 (App. 2013) (citation and internal quotation marks omitted). A defendant "must affirmatively prove prejudice and may not rely upon speculation to carry his burden." *Id.* (citation and internal quotation marks omitted).

**¶20**        During his testimony, Officer Olofson testified that he was concerned about his own safety as well as that of his partners when they contacted Piper at his home, in part because the officers "already had, you know, prior knowledge that there may have been an incident before."

**¶21**        After Officer Olofson finished testifying, a juror submitted a question asking, "What did he mean by 'previous incident' when discussing when defendant came out door with gun [sic]? Did he have prior contact with defendant prior to 12-19-21[?]."

**¶22**        The court discussed the question with counsel, and explained the court was "unclear . . . whether there was a previous incident with [Piper] and the officers or whether or not they were talking about [C.W.]." The court suggested it would not ask Officer Olofson the juror's question and instead would instruct the jury that the "previous incident" was the incident involving C.W. Both sides agreed with this approach, and the court excused Officer Olofson without asking the question. The court then instructed the jury:

> Ladies and gentlemen, the reason why there's a stipulation on the answer to this question we have had two officers talk about a previous incident. I had the same confusion that . . . the jury had. The testimony about a previous incident this officer testified to on one and another officer testified to it they were both talking about the incident with [C.W.] though that was earlier that night. That is the previous incident they were referring to.

**¶23**        The State agrees that the court's instruction was inaccurate with regard to Officer Francis' testimony because "[t]hat testimony indicates officers had responded to Piper's home 'on a different call' which

would indicate a different date." Officer Francis, who testified before Officer Olofson, testified that he was familiar with Piper's residence because he "had actually previously dealt with Mr. Piper on a different call. So we used a similar approach that we had on that call to approaching this one." Piper did not object to Officer Francis' testimony and the jury did not ask Officer Francis any questions.

¶24 Even if the superior court erred by giving the instruction, Piper cannot establish that the error was fundamental, prejudicial error. We will presume the jury followed the court's instructions. *State v. Prince*, 226 Ariz. 516, 537, ¶ 80 (2011). Nothing in the record indicates the jurors failed to follow the court's instruction or improperly considered evidence that Piper had some sort of unspecified contact with law enforcement in an unrelated matter. And, although the instruction was not entirely accurate, it benefited Piper, who later testified he had no previous issues with law enforcement "[p]rior to that day." Piper has therefore failed to establish that fundamental, prejudicial error occurred.[1]

IV.    Prosecutorial Error[2]

¶25 Piper next argues the prosecutor engaged in repeated instances of misconduct that deprived him of a fair trial. "[W]e review objected-to claims for harmless error and unobjected-to claims for fundamental error." *Robinson*, 253 Ariz. at 142, ¶ 64 (citation and internal quotation marks omitted). We will reverse a conviction due to prosecutorial error only if (1) error exists; and (2) there is a reasonable likelihood that the error could have affected the jury's verdict, thereby denying the defendant a fair trial. *Id.* (citation omitted). "[W]e review each alleged incident individually for error, after which we decide whether the cumulative effect of any errors we find so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 143, ¶ 64 (citation and internal quotation marks omitted).

---

[1]    Without providing any additional argument, Piper claims the prosecutor committed prosecutorial error by stipulating to the court's approach to the juror's question. We find no fundamental error.

[2]    Piper does not argue, and we do not separately determine in this appeal, whether any ethical violation has occurred. *See In re Martinez*, 248 Ariz. 458, 469-70, ¶¶ 42-47 (2020). We therefore refer to Piper's alleged claims of prosecutorial misconduct as prosecutorial error. *See id.*

¶26 Piper first claims the prosecutor erred by misstating the law regarding the presumption of innocence during the prosecutor's opening statement. During his opening statement, the prosecutor stated:

> And the second thing you need to presume is that the defendant is innocent. Somebody said at the outset, well, hey, we're all here sitting around; he must have done something. What you're supposed to do is presume that the defendant is innocent; that no evidence has been presented against him. You maintain that presumption of innocence throughout the trial so that you can maintain objectivity in evaluating the evidence you hear.
>
> Once the evidence is presented though, ladies and gentlemen, and we're done talking up here, the presumption of innocence disappears and it's your duty to go back into the room where you deliberate and . . .

Defense counsel objected, and after a sidebar discussion, the court sustained the objection and told the prosecutor to rephrase his statement. The prosecutor then stated:

> The point being made, at the conclusion, ladies and gentlemen, when you evaluate the evidence collectively, consider the credibility of the witnesses, the body cams and all the other evidence, we believe the evidence will show and firmly convince you that the defendant is guilty of the charges in this case. Thank you.

Defense counsel then began his opening statement and told the jury:

> Ladies and gentlemen . . . I want to make sure it is absolutely clear to you what the presumption of innocence means. That means up until the moment when you're in the jury room and you're deliberating and you are deciding the facts, up until you believe the state has proven each and every element of each and every charge beyond a reasonable doubt, Mr. Piper is presumed innocent. It is their burden to overcome that presumption and overcome it beyond a reasonable doubt.

¶27 Any error in the prosecutor's initial statement did not deny Piper a fair trial. After Piper's objection was sustained, the prosecutor clarified that he believed the totality of the evidence would establish Piper's guilt. Both the preliminary and final jury instructions emphasized that

Piper was presumed innocent and the State had the burden of proving the charges against him beyond a reasonable doubt. And, during closing argument, the prosecutor unequivocally stated that Piper was presumed innocent, and it was the State's burden to prove the charges beyond a reasonable doubt, consistent with the jury instructions.

¶28 Piper next argues the prosecutor erred by asking C.W. a question about whether she and Piper had an open relationship without having a good-faith basis for the question. During C.W.'s testimony, the prosecutor asked, "When you were in a relationship with Mr. Piper, did the two of you ever discuss what is commonly referred to as a quote/unquote, open relationship?" Defense counsel objected on relevance grounds, and the court overruled the objection. The prosecutor repeated the question, and C.W. testified that she and Piper had not discussed an open relationship.

¶29 Because Piper failed to object on prosecutorial error grounds, we review for fundamental error. *See State v. Rutledge*, 205 Ariz. 7, 13, ¶ 30 (2003). We find no error, fundamental or otherwise. The fact that C.W. denied having a discussion with Piper about having an open relationship does not mean the prosecutor did not have a good-faith basis for asking the question.[3] Moreover, Piper did not ask the prosecutor to provide a good-faith basis for the question. *See State v. McKelton*, 70 N.E.3d 508, 568, ¶ 258 (Ohio 2016) (when defendant failed to request prosecutor to supply a good-faith basis for his questions appellate court would presume that a good-faith basis for the questions existed). And, as the court instructed the jury, attorneys' questions are not evidence.

¶30 Piper next argues the prosecutor erred during his cross-examination of Piper by asking him about his ownership and familiarity with firearms. The prosecutor asked Piper whether he was a hunter, and defense counsel objected on relevance grounds. The superior court overruled the objection, and Piper testified:

Q. So you're an avid hunter; is that true?

A. Yes.

---

[3]   During Piper's police interview he told police he and C.W. had previously discussed an open relationship to include C.W. and B.G. having sex.

Q. You take any gun safety, firearm safety courses incident to owning the weapons that the officers found in the house?

A. When I was very young.

Q. And you had, what, six, seven guns there?

A. Probably.

Q. Different models, different varieties, different choices, depending on target practice or anything else, true?

A. Yes.

Q. Are you familiar with the rules of handling and operating firearms?

A. Yes, I am.

Piper made no further objections to the prosecutor's line of questioning.

¶31 According to Piper, the prosecutor's questions were intended to "inflame the passions and prejudices of the [j]ury," and violated a pretrial in limine order.

¶32 We find no error. The superior court's pretrial order concerned photographs of numerous weapons police found in Piper's home that were not relevant to any of the charges in this case. The court ordered that the State could introduce photographs of three of Piper's weapons into evidence: the shotgun he pointed out the front door at police, a handgun he allegedly pointed at C.W., and a loaded rifle police found on Piper's kitchen counter. The State only introduced photographs of those three weapons into evidence. And Piper's familiarity with guns was relevant to rebut his testimony that he accidentally discharged his gun while in his house with C.W. The prosecutor's questions do not evidence an intent to inflame the jurors.

¶33 Piper next argues the prosecutor's improper argument during closing argument unfairly characterized him as a danger to the community because he possessed firearms. During closing argument, the prosecutor noted that the law protects law enforcement officers from violent crimes:

So just a reminder and request . . . ladies and gentlemen, there are two sides of a jury trial. The rights of the accused and the rights of the State. And really you and all of us are citizens of

the State that requires jury members to honor and follow the laws of the State that protect people like law enforcement officers, literally first responders in this case, from intentional and knowing acts of violence committed by citizens who have done something to initiate law enforcement emergency response.

Defense counsel did not object.

¶34　　　Later, the prosecutor argued:

Now, these three aggravated assault charges have two simple elements. The first element requires the State to prove that the defendant committed an assault. Did he intentionally place the officers, each victim, in reasonable apprehension of imminent physical injury. Not surprisingly, in Arizona, which is a fairly liberal gun rights state, weapons invoke fear. *People dying from gun violence and provoke [sic] gun violence, you need to consider that in terms of weapons, loaded weapons--*

(Emphasis added.) Defense counsel objected, the court held a sidebar discussion, and the court stated it would instruct the jurors not to consider any gun violence not involved in the case. The court then instructed the jury, "Ladies and gentlemen, you are not to consider any statements about other shootings and the misuse of firearms in other cases and in other contexts. The only thing that is relevant is what happened here."

¶35　　　The prosecutor resumed his closing argument, stating:

*And the State would submit the danger that firearms pose to the community.* Two law enforcement victims we are talking about [Officers] Laube and Leedham were the ones right up against the house, right up to the next door [sic].

(Emphasis added.) Defense counsel did not object.

¶36　　　Piper argues the italicized statements above mischaracterized him as violent and a danger to the community. Although the prosecutor primarily emphasized that law enforcement officers can be victims of gun violence and the potential danger of loaded weapons, his comment that "[p]eople [are] dying from gun violence" was improper. But after that brief comment the superior court instructed the jury not to consider "any statements about other shootings and the misuse of firearms in other cases and in other contexts." We will presume the jurors followed the superior

court's curative instruction. *See State v. Thompson*, 252 Ariz. 279, 300, ¶¶ 81-83 (2022). There is not a reasonable likelihood that the statement could have affected the jury's verdict thereby denying Piper a fair trial. *See id.*

**¶37** The prosecutor's comment about the danger of firearms was not objected to, and was made in the context of the prosecutor's discussion of the aggravated assault charges for Officers Laube and Leedham. The prosecutor also emphasized that Arizona "is a Second Amendment proponent of those who want the right to bear arms." Piper has failed to establish that fundamental, prejudicial error occurred. *See Robinson*, 253 Ariz. at 142, ¶ 64.

**¶38** Finally, Piper argues the prosecutor erred by giving expert opinion evidence during closing argument. During his argument, the prosecutor discussed C.W.'s testimony that she heard a gunshot on the night in question, which she had not mentioned in her police interview. He argued her inconsistency was understandable because "that is how severe stress and trauma works. It affects the brain's ability to remember details." Defense counsel objected, and the court overruled the objection, stating that the argument was reasonable. Later, the prosecutor argued:

> Let's start with alcohol. . . . This is what this case is about. Alcohol. And your use of common sense and how people behave and what the defendant did.
>
> Alcohol is associated with mood swings and danger. Alcohol leads to less emotional control. People are less likely to hold themselves back. Alcohol for those in recovery, the phrase "emotional sobriety" and "emotional maturity" should ring a bell. Alcohol makes people do stupid things. And alcohol is often an excuse and justification. Alcohol and anger, ladies and gentlemen, is a pretty dangerous situation. And I think your life experience would prove that alcohol and anger and a loaded shotgun or an automatic handgun is a recipe for a truly lethal tri-unity.

Piper did not object to the prosecutor's arguments about alcohol.

**¶39** The challenged statements were not improper. *See State v. Allen*, 253 Ariz. 306, 338, ¶ 95 (2022) ("Prosecutors are given wide latitude in presenting closing argument to the jury" and may "make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions.") (citation and internal quotation marks omitted). The prosecutor's arguments that stress affects memory, alcohol

"makes people do stupid things," and alcohol and anger combined can lead to dangerous situations were topics within the common knowledge and experience of the jurors. *See State v. Randles*, 235 Ariz. 547, 550-51, ¶ 17 (App. 2014). And the prosecutor did not claim to be an expert on those topics. We find no error.

**¶40** Finally, when considered cumulatively, the errors made by the prosecutor did not result in a violation of Piper's due process rights. Piper's objection to the prosecutor's comment during the State's opening statement about the presumption of innocence "disappear[ing]" when deliberations began was sustained, the comment was not repeated during closing argument, and the jurors were properly instructed on the presumption of innocence. The prosecutor's comment during closing argument about people dying from gun violence was brief, and the superior court gave the jurors a curative instruction. Even when considered cumulatively, the errors did not "so infect[] the trial with unfairness as to make the resulting conviction[s] a denial of due process." *Robinson*, 253 Ariz. at 143, ¶ 64 (citation and internal quotation marks omitted).

**CONCLUSION**

**¶41** For the foregoing reasons, we vacate Piper's convictions and sentences for two of the disorderly conduct charges and affirm his convictions and sentences for the remaining counts.



AMY M. WOOD • Clerk of the Court
FILED: AA